Argued June 16, reversed July 20, petition for rehearing denied
September 6, 1960

## McCOMBS ET AL *v.* McCLELLAND

354 P. 2d 311

*William J. Masters* argued the cause for appellant. On the brief were Masters & Masters, Portland.

*Alan H. Johansen,* Portland, argued the cause for respondents. With him on the brief were Krause, Lindsay & Nahstoll, Portland.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell and Millard, Justices.

MILLARD, J. (Pro Tempore)

This is an appeal by defendant from a decree of the circuit court of Multnomah county wherein defendant, who was a former employee of a press-clipping service operated by plaintiffs, was enjoined from disclosing any information relating to plaintiffs' business affairs, including data relating to customers' requirements, trade secrets and customer lists, which defendant may have acquired by reason of her employment by the plaintiffs, and further enjoining her until October 31, 1959, from working as a reader or assisting in any press-clipping service which served former customers of the plaintiffs.

It appears from the evidence that the plaintiff co-partnership operates a press-clipping service for the benefit of a large number of subscribers, with branch offices in Los Angeles, San Francisco, Seattle and Portland. In connection with this business it is necessary to employ readers who require about six months' training before they become adept at their work. Defendant was employed by plaintiffs as a reader about October, 1948, and continued in their employ until about October 31, 1958, becoming highly proficient at her job. As a part of her duties she necessarily became acquainted with customer requirements

and in some instances with the identity of the customers served, although she testified in effect that was not true in most cases. Until about 1957 plaintiffs were without any business competition, at least in the Portland area. At about that time the Northwest Clipping Bureau entered the field and became active and aggressive competition; in fact, so much so that plaintiffs felt compelled to revise their methods to meet competition. It is evident that the employment and retention of proficient readers became of prime importance to both firms. Plaintiffs, in order to meet this situation, sought to enter into contracts with various of their employees, including defendant. Accordingly, on March 8, 1957, Walter Collins, who was then the branch manager of the Portland office where defendant worked, presented her with a form of written agreement. Nothing was promised defendant to induce her to sign, nor was there any suggestion of continued employment or of discontinuance of employment if she did not execute the agreement. The evidence of defendant is uncontradicted that all the manager ever said to her was, "Here it is, sign it if you want to." Defendant then signed the agreement hereinafter set forth:

## "EMPLOYMENT AGREEMENT

"In consideration of the mutual benefits of employment between Employer and Employee, and in consideration of the confidential nature of the business operated by Allen's Press Clipping Bureau, the undersigned Employee agrees that Employee will not, without the prior written consent of Employer, during the term of Empolyee's [sic] employment, or at any time thereafter, disclose to any person, firm or corporation any information including but not limited to, data concerning customers' requirements, trade secrets and

customer lists, concerning the business or affairs of Employer which Employee may acquire in the course of, or as incident to employment by Allen's Press Clipping Bureau.

"In addition, Employee agrees that Employee will not, for a period of one year next following the termination of employment for Allen's Press Clipping Bureau, become employed by or render services to any other organization or individual providing press clipping services within the territory which continues to be served by Allen's Press Clipping Bureau.

"Dated, March 8, 1957

"ALLEN'S PRESS CLIPPING BUREAU
By [Sgd.] Philip N. McCombs
_____
Employer

[Sgd.] Ruth McClelland
_____
Employee."

Defendant continued in plaintiffs' employ until October 31, 1958, when she voluntarily terminated her employment. She testified in effect that she did so because of the constant pressure on her to increase her production, and through solicitation of a former co-employee who was then employed by Northwest Press Clipping Bureau and at the instigation of its manager. Thereupon she entered into the employment of the rival firm at the same basic monthly wage of $265. It appears that her former employer in addition to her salary sometimes paid her a small bonus for meritorious service. Plaintiffs contend that not only has defendant violated her contract by taking other employment, but that she has given information in the nature of business secrets pertaining to plaintiffs' business to the rival employer and competitor and by reason thereof seeks injunctive relief.

■ As her first assignment defendant contends the court erred in enjoining defendant as hereinabove set forth and in one particular urges that the agreement relied upon by defendant is unenforceable in that it is not supported by any consideration. Generally such agreements, being partially in restraint of trade, to be enforceable as contracts must be: (1) partial or restricted in their operation either as to time or place; (2) must be for good consideration; and (3) must be reasonable. *Kelite Prod. Inc. v. Brandt et al.*, 206 Or 636, 651, 294 P2d 320; *Eldridge et al. v. Johnston*, 195 Or 379, 403, 245 P2d 239. Had defendant signed the agreement at the time she first became employed, no problem regarding consideration would arise, as a benefit would accrue to her by reason of obtaining employment. Here she was already employed, so no present benefit could accrue to her solely because of that fact. Some courts attempt to sustain such agreement on the theory that unilateral contracts are intended, i.e., a promise for an act. But under that theory it appears that there is always either an express promise of continued employment or one can be implied from the circumstances or some other consideration is present. Where the employee under such circumstances continues to perform, it has been held that there is sufficient consideration. Other cases appear to proceed on the theory of executed consideration; that is, when a contract voidable for want of mutuality because by the terms it does not bind one of the parties is performed by such party on demand made by the other, it becomes obligatory. See *Harvester King Co. v. Mitchell, Lewis & Staver Co.*, 89 F 173. But an examination of the cases relating to employment agreements of this type indicates that when contracts have

been sustained on that basis the courts have always found a promise of continued employment, or one could be implied from the circumstances. Here there was no express promise of continued employment. On the contrary the expressed consideration had reference to a pre-existing contract of employment. Plaintiffs could have discharged defendant immediately after she signed the contract. Nor can any promise of continued employment be implied, as plaintiffs were not requiring her to sign as a condition of employment. On the contrary, plaintiffs' manager only told her to "sign it if you want to." Defendant further testified without contradiction that "we weren't forced to sign it."

In 152 ALR 415 appears an annotation entitled "Validity and enforceability of negative restrictive covenant in contract for services as affected by fact that it was not included in original contract of employment but in a subsequent contract for continuance of employment." It is pointed out that:

> "There is a difference of opinion as to the validity and enforceability as against the employee of a covenant of the kind herein discussed, where the covenant was made subsequently to the beginning of the employment. Some of the courts hold that, under the circumstances, there is no consideration for the covenant, and that it is, therefore, unenforceable as against the employee; on the other hand, it has been held that the continuance of the employment is a sufficient consideration for such a covenant."

As supporting the theory of lack of consideration in a like type of situation defendant cites *Kadis v. Britt*, 224 NC 154, 29 SE 543, 152 ALR 405, 413; *May v. Lee* (Tex), 28 SW2d 202, 204; *Schneller v. Hayes*, 176

Wash 115, 28 P2d 273. In *Schneller v. Hayes,* supra, at p 274, the court said:

"The contract did not promise any additional employment. In fact, it is clearly not a contract of employment, but rather an ancillary unilateral engagement on the part of respondent. It promised respondent nothing in the way of future employment and stipulated nothing as to wages. * * *. But in this case the contract is wholly lacking in consideration moving to respondent."

The same statement is applicable to the facts of this case.

Plaintiffs, in support of the contrary view, cite the following cases. *Roessler v. Burwell,* 119 Conn 289, 290, 293, 176 A 126; *Torrington Creamery v. Davenport,* 126 Conn 515, 12 A2d 780, 782; *City Ice & Fuel Co. v. McKee* (Mo), 57 SW2d 443, 445, 447; *Credit Rating Service v. Charlesworth,* 126 NJ Eq 360, 8 A2d 847, 849; *Irvington Varnish & Insulator Co. v. Van Norde,* 138 NJ Eq 99, 46 A2d 201, 202; *Sarco Co. v. Gulliver,* 3 NJ Misc 641, 129 A 399, 400, 403, aff'd 99 NJ Eq 432, 131 A 923; *Clark Paper & Manufacturing Co. v. Stenacher,* 177 NYS 614, 108 Misc 399, aff'd without opinion 184 NYS 914, 193 App Div 924, rev on other grounds, 236 NY 312, 140 NE 708; *Eastman Kodak Co. v. Powers Film Products,* 179 NYS 325, 327, 189 App Div 556; *McAnally v. Person* (Tex), 57 SW2d 945, 947; *Bettinger v. North Fort Worth Ice Co.* (Tex), 278 SW 466, 469. A careful examination of these cases reveals either statements in the subsequent contract or outside of it, indicating in the main an agreement for continued employment or the circumstances were such as to indicate that the employee would have lost his job had he not executed the agreement. In *Credit Rating Service v. Charles-*

*worth,* supra, the contract recited "in partial consideration of my employment by you," the court construing the term to relate to continued employment. In *Clark Paper & Mfg. Co. v. Stenacher,* supra, we find no promise of continued employment, express or implied. The court sustained the contract, however, on the theory of executed consideration occasioned by partial performance. We do not subscribe to this view. With the exception of the last mentioned case, the difference in view is not irreconcilable. We hold that where one already employed is induced to enter into a subsequent agreement containing a restrictive covenant as to other employment, such agreement to be enforceable must be supported by a promise of continued employment, express or implied, or some other good consideration. For the reason stated; i.e., lack of consideration, we find the subsequent contract of March 8, 1957, not enforceable.

■ It does not follow, however, that the trial court was confined in its consideration to the questioned agreement. There is an implied obligation of an employee not to use trade secrets or confidential information for his own benefit or that of third persons after leaving their employment. In 165 ALR 1453, an extensive annotation on the subject, it is stated at p 1454:

> "The law is well settled that one of the implied terms of a contract of employment is that the employee will hold sacred any trade secrets or other confidential information which he acquires in the course of his employment, and that therefore an employee who has left his employment is under an implied obligation not to use trade secrets or other confidential information which he has acquired in the course of his employment, for his own benefit or that of a rival, and to the detriment of his former employer."

See also *Port. Invest. Co. v. Oregon M. F. Ins. Co.,* 163 Or 1, 94 P2d 734, 124 ALR 1342.

██ Therefore, irrespective of the latter agreement, defendant, by reason of her former employment, owed plaintiffs the duty to refrain from divulging trade secrets or confidential information. The record is devoid of any direct evidence of violation of this duty. Plaintiffs instead rely solely on circumstantial evidence to support this alleged dereliction. Plaintiffs originally had 3,000 or more accounts. Defendant recognized "perhaps fifteen or twenty" accounts at Northwest which were formerly served at plaintiffs' establishment. The manager of the rival concern thought Northwest served 25 or more, although on cross-examination he admitted it might be more. For the most part we have no way of knowing whether these accounts left plaintiffs before or after defendant terminated her employment. Robert H. Elsner, plaintiffs' manager, testified that "we lost several" after defendant left plaintiffs' employment, but he failed to identify them with the exception of the McCord Company and the Commissioner of Public Docks. The charge as to the later account admittedly was not in any way connected with defendant. It appears that McCord Company left as a result of a comparison of the two services. There is no direct testimony that defendant had anything to do with it. It is just as reasonable to assume that Walter Collins of that company who authorized the change and who was formerly employed by plaintiffs was solely responsible. It further appears that defendant at the time she became employed by Northwest expressly stipulated that she not be required to divulge confidential information gained while in plaintiffs' employ, and defendant testified that any such information was

not divulged, nor was any inquiry directed to her concerning such information. At best the evidence adduced only indicates that plaintiffs fear that she might have done so. The proof is insufficient. If plaintiffs are to prevail, it must appear that the danger is probable or threatened. 28 Am Jur 522, Injunction § 30. Injunction will not be granted merely to allay the fears and apprehensions of an individual. *Arthur Murray Dance Studios of Cleveland v. Witter* (Ohio), 105 NE2d 685, 703; 43 CJS 435, 438, Injunction § 21. The fact that defendant may have gained considerable experience while in plaintiffs' employ is not grounds for injunctive relief. An employer cannot by contract prevent his employee upon termination of the employment from using skill and intelligence acquired or increased and improved through experience or through instruction received in the course of employment. *Club Aluminum Co. v. Young,* 263 Mass 235, 160 NE 801, 806.

It might appear that a portion of this opinion insofar as it is concerned with future employment of defendant deals with a question that is now moot, since the period of restricted employment contained in the agreement has now expired. Such is not the case, since in argument here it appeared that contempt proceedings either were proposed or contemplated against the defendant.

In view of the conclusions reached, the decree of the trial court is reversed.