Argued May 10, reversed June 28, 1977

# REM METALS CORPORATION, *Respondent,*
*v.*
# LOGAN, *Appellant.*
## (TC 48428, SC 24779)
565 P2d 1080

Kenneth S. Klarquist, Portland, argued the cause for appellant. With him on the briefs were James Campbell and Klarquist, Sparkman, Campbell, Leigh, Hall & Whinston, Portland.

Malcolm J. Montague, Portland, argued the cause for respondent. With him on the brief were Clemens E. Ady and White, Sutherland, Parks & Allen, Portland.

Before *Denecke, Chief Justice, and Tongue, Linde and Campbell, Justices.

TONGUE, J.

---

*Denecke, C. J., did not participate in this decision.

## TONGUE, J.

This is a suit in equity to enforce "noncompetition" provisions of two employment agreements between plaintiff and defendant, who had been employed by plaintiff as a welder of precision titanium castings. Defendant appeals from a decree enjoining him from engaging in such work for a period of six months in Oregon for Precision Castparts Corporation, a competitor of plaintiff. We reverse.

The primary question presented for decision in this case, according to plaintiff Rem, is whether, as an employer, it had a sufficient "protectible interest" in the skills and knowledge of defendant as a skilled craftsman engaged as a repair welder of precision titanium castings, so as to justify enforcement of such a "noncompetition" agreement as a "reasonable restraint" upon defendant.[1]

The titanium castings on which defendant Logan worked as a repair welder were produced by his employer, the plaintiff, under contract with Pratt & Whitney Aircraft Division for use as bearing housings for jet aircraft engines under exceedingly strict specifications. Only three companies are engaged in the production of such castings for Pratt & Whitney. These include plaintiff, Precision Castparts (its principal competitor) and Misco of Michigan (a smaller company).

In the process of the production of such castings any defects are repaired by welding performed by skilled welders who are "certified" by Pratt & Whitney inspectors as being sufficiently skilled to be entrusted with this important work. There was also some evidence that titanium is a "rare" or "reactive" metal and is difficult to weld.

Defendant was one of two or three "certified"

---

[1] Plaintiff and defendant also raise other questions which we need not decide because of the basis on which we decide this initial and primary question.

welders employed by plaintiff and was plaintiff's best welder, with a proficiency rating of 98.3 per cent. Other welders rated below 95 per cent. There was testimony, however, that three other welders had been able to become sufficiently qualified so as to be "certified" for Pratt & Whitney work after 20 hours of training and that during 1966 seven of plaintiff's welders (including defendant) were so "certified."

Defendant Logan had been previously employed by Wah Chang Corporation, where he learned to weld electrodes of titanium. He was employed by plaintiff in 1969 and subsequently signed two employment contracts, as did nearly all Rem employees, including provisions to the effect that for a period of one year after termination he would not engage in any business in competition with Rem within the United States, "whether as principal, agent, employer, consultant or otherwise."

In 1972 defendant was transferred to the welding department. He testified that he became "certified" in "less than two weeks," and that no one gave him "any instruction before he took the certification test" for the welding of titanium.

Plaintiff offered testimony describing its training program for welders. When asked whether Rem had any "trade secrets in the welding department that are not generally known in the industry," that witness answered that "Rem was able to do a better job," to ship ahead of its schedules, and with fewer "rejects" from Pratt & Whitney than its competitors, so that "there is something we must be doing that our competitors are not doing." Rem's president testified that defendant received job training at Rem and "extensive written procedures prepared by Rem" which enable him to weld titanium castings. He also testified, however, that it was nevertheless not surprising that defendant Logan was able to become "certified" within "a matter of a few days," as testified by Logan.

Rem's supervisor of welding testified that:

"I don't think its a matter of disclosing inasmuch as it is its instructional nature. If a welder's in the tank doing the work, we're qualifying it and giving what instructions we are capable of."

There was also testimony by another former Rem titanium welder, since employed by Precision Castparts, that he observed no differences in the welding procedures and techniques at Rem and at PCP except that Rem uses a "vacuum tank," while PCP uses a "plastic bubble," both of which are standard techniques.

On September 18, 1976, defendant Logan, after being refused a wage increase of 50 cents per hour by Rem, went to work at that increased rate for Precision Castparts. Plaintiff offered evidence that, as a result, it was unable for a period of two weeks to ship castings worth approximately $25,000 to Pratt & Whitney and that it then had difficulty in maintaining its shipping schedules of such titanium castings because it did not have welders who were "able to complete the weld repair cycle in a satisfactory manner." It appears, however, that Rem was then able to train two welders who "shortly thereafter were able to pass the qualification test of Pratt & Whitney." Plaintiff's witnesses also testified to their concern over Rem's continued ability to compete with Precision Castparts, its principal competitor, which by then had 14 or 15 titanium welders, including defendant Logan.[2]

■ It would serve no useful purpose to discuss at length the many authorities on the subject of the enforcement ability of noncompetition provisions in employment contracts.[3] The general rule, as adopted for application

---

[2] It also appears that Precision Castparts is "underwriting" the cost of Mr. Logan's defense.

[3] *See, e.g., North Pacific Lbr. v. Moore,* 275 Or 359, 551 P2d 431 (1976); *Mail-Well Envelope Co. v. Saley,* 262 Or 143, 497 P2d 364 (1972); *McCombs et al v. McClelland,* 223 Or 475, 354 P2d 311 (1960); *Kelite Prod., Inc. v. Brandt et al,* 206 Or 636, 294 P2d 320 (1956), and cases cited therein. *See also* Restatement of Contracts 995-96, § 516 (1932); Annot., 41 ALR2d 15

in such cases in Oregon in *Eldridge et al v. Johnston,* 195 Or 379, 403, 245 P2d 239 (1952), is as follows:

"Three things are essential to the validity of a contract in restraint of trade: (1) it must be partial or restricted in its operation in respect either to time or place; (2) it must be on some good consideration; and (3) it must be reasonable, that is, *it should afford only a fair protection to the interests of the party in whose favor it is made,* and must not be so large in its operation as to interfere with the interests of the public. * * *"[4] (Emphasis added)

■ As also stated in *North Pacific Lbr. v. Moore,* 275 Or 359, 364, 551 P2d 431 (1976):

"To be entitled to the protection which a noncompetition covenant purports to provide, the employer must show that he has a 'legitimate interest' entitled to protection. * * *"

At the outset, it is important to bear in mind that this is not a case involving an employee whose regular duties involved frequent dealings with customers of his employer and who had access to "customer lists" or other similar confidential information relating to customers, as involved in *Cascade Exchange v. Reed,* 278 Or 749, 565 P2d 1095 (1977).

■ In our judgment, this case falls within the rule as stated in Blake, *Employee Agreements Not to Compete,* 73 Harv L Rev 625, 652 (1960), as follows:

"* * * It has been uniformly held that general *knowledge, skill, or facility acquired through training or experience while working for an employer appertain exclusively to the employee.* The fact that they were acquired or developed during the employment does not,

---

(1955); Annot., 152 ALR 415 (1944); Blake, *Employee Agreements Not to Compete,* 73 Harv L Rev 625 (1960); and *Arthur Murray Dance Studios of Cleveland v. Witter,* 105 NE2d 685 (Ohio Com Pl 1952) and the many cases and other authorities cited therein.

[4]To the same effect, *see North Pacific Lbr. v. Moore,* 275 Or 359, at 364, 551 P2d 431 (1976); *Mail-Well Envelope Co. v. Saley,* 262 Or 143, at 154, 497 P2d 364 (1972); *McCombs et al v. McClelland,* 223 Or 475, at 480, 354 P2d 311 (1960); and *Kelite Prod., Inc. v. Brandt et al,* 206 Or 636, at 651, 294 P2d 320 (1956).

by itself, give the employer a sufficient interest to support a restraining covenant, even though the on-the-job training has been extensive and costly. *In the absence of special circumstances* the risk of future competition from the employee falls upon the employer and cannot be shifted, even though the possible damages is greatly increased by experience gained in the course of the employment." (Emphasis added)

To the same effect, although under different facts, it was held in *McCombs et al v. McClelland,* 223 Or 475, 485, 354 P2d 311 (1960) that:

"* * * The fact that defendant may have gained considerable experience while in plaintiff's employ is not grounds for injunctive relief. An employer cannot by contract prevent his employee upon termination of the employment from using skill and intelligence acquired or increased and improved through experience or through instruction received in the course of employment, * * *."[5]

We recognize, however, as does Blake, *supra* (at 653), that on any given set of facts it may be difficult to "draw a line" between "training in the general skills and knowledge of the trade, and training which imparts information pertaining especially to the employer's business" and that this is the "central problem" in such cases. In other words, as stated by Blake, *supra* (at 647):

"* * * Its objective is not to prevent the competitive use of the unique personal qualities of the employee—either during or after the employment—but to prevent competitive use, for a time, of information or relationships which pertain peculiarly to the employer and which the employee acquired in the course of the employment. * * *"[6]

■ In such a case, however, the burden of proof is upon

[5] *See also* Restatement of Contracts 996, § 516(f) (1932), and comment on clause (f) at 1001.

[6] As stated in *Sarkes Tarzian, Inc. v. Audio Devices, Inc., et al,* 166 F Supp 250, 265 (SD Calif 1958):

"* * * Trade secrets must be 'the particular secrets of the employer as distinguished from the general secrets of the trade in which he is engaged'. * * *"

the employer to establish the existence of "trade secrets," "information or relationships which pertain peculiarly to the employer," or other "special circumstances" sufficient to justify the enforcement of such a restrictive covenant. *See Arthur Murray Dance Studios of Cleveland v. Witter,* 105 NE2d 685, 709 (Ohio Com Pl 1952) and cases and authorities cited therein.

■ Based upon our examination of this record, which we review de novo, and under the facts and circumstances of this case, we hold that this employer failed to sustain that burden of proof. Although defendant received training and experience while employed by plaintiff which developed his skill as a repair welder of titanium castings, plaintiff did not, in our judgment, establish by sufficient and credible evidence "special circumstances" of such a nature as to entitle Rem to demand the enforcement upon this defendant by injunction of this "noncompetition" clause as a "reasonable restraint."

For these reasons, the decree of the trial court is reversed.