CASCADE EXCHANGE, INC., *Respondent,*
*v.*
REED, *Appellant.*

CASCADE EXCHANGE, INC., *Respondent,*
*v.*
PARKER, *Appellant.*
(TC 20103 and 20277, SC P-2498 (Consolidated))

565 P2d 1095

Larry J. Anderson, of Anderson & Richmond, Eugene, argued the cause for appellants. With him on the briefs was Raymond A. Babb, Bend.

Vawter Parker, of Dezéndorf, Spears, Lubersky & Campbell, Portland, argued the cause for respondent. With him on the brief was James H. Clarke, Portland.

Before Denecke,* Chief Justice, and Holman, Tongue, Howell, Bryson, Lent and Linde, Justices.

PER CURIAM.

---

*Denecke, C. J., did not participate in this decision.

**PER CURIAM.**

These are suits in equity to enforce "noncompetition" provisions of employment agreements between plaintiff and defendants, who had been employed by plaintiff as "dispatchers" or "brokers" in plaintiff's truck brokerage business in Redmond. Defendants appeal from a decree enjoining them from engaging in that business in Oregon for two years. We affirm.

The primary question presented for decision is whether plaintiff, as an employer, had such a "protectible interest" as to entitle it, under the facts of this case, to the enforcement of such contracts.[1] At the outset, however, it is important to bear in mind that this is not a case in which an employer seeks to enforce such an agreement against a skilled workman in an industrial plant whose skills were acquired through training and experience during the course of his employment, as in *Rem Metals Corp. v. Logan,* 278 Or 715, 565 P2d 1080 (1977). Instead, this is a case in which the employees' work necessarily involved access to plaintiff's "customer lists," as well as some other "specialized" information relating to customers, and employees who also had frequent and close contacts with plaintiff's customers on a personal basis, as in *Kelite Prod., Inc. v. Brandt et al,* 206 Or 636, 294 P2d 320 (1956), and *North Pacific Lbr. v. Moore,* 275 Or 359, 364-65, 551 P2d 431 (1976).[2]

Because, after reviewing this record, we are convinced that our decision in this case is controlled by our previous decisions in *Kelite* and *North Pacific,* despite some differences, as argued by defendants, we see no good reason to write an extended opinion in this case. Instead, we adopt the opinion by the trial court which, while quoting and relying upon our decision in *Kelite,* was decided immediately prior to our subse-

---

[1] *See Eldridge et al v. Johnston,* 195 Or 379, 403, 245 P2d 239 (1952).

[2] *See also* Blake, *Employee Agreements Not to Compete,* 73 Harv L Rev 625, 653-74 (1960).

quent decision in *North Pacific.* That opinion by the trial court is as follows:

"Plaintiff seeks to enforce a provision of an employment contract prohibiting defendants, plaintiff's former employees, from engaging in a competing business. The covenant reads, in part, as follows:

" 'Upon the termination of this agreement Parker (Reed) will refrain directly or indirectly from carrying on a business similar to that involved under this agreement in the State of Oregon for a period of two years from the date of termination.'

"Defendants plead, as an affirmative defense, that the covenant is unenforcible on the grounds that it is a restraint of employment and is not reasonably necessary to protect any legitimate interest of the plaintiff. At trial, the defendants further argued that the potential hardship upon defendants in enforcing the provision far outweighed any benefit accruing to plaintiff in its enforcement and for that reason equity should not enforce the restriction. In support of their position that it is not reasonably necessary to protect any legitimate interest of the plaintiff, defendants contend that the covenant, by the nature of plaintiff's business, affords no protection as defendants could lawfully conduct their competing business by moving without the State of Oregon and that the scope of business would be the same no matter where their offices were located.

"Plaintiff is a truck brokerage company that coordinates shippers and truckers interstate with primary attention to shippers and truckers in the Western United States. The solicitation for and conduct of business by plaintiff is transacted almost entirely through the use of inward WATS telephone lines, thereby rendering the physical location of the business office of minimal importance. It is necessary in the conduct of truck brokerage to use certain resources for access to potential customers among which is a Blue Book containing lists of shippers, primarily, with credit ratings and a Red Book also containing lists of shippers but with no credit ratings. These two publications are used in the trade and are generally available. Mr. Brown, plaintiff's president, testified that, in addition, his company had its own customer lists which were not available to others gener-

[ 752 ]

ally and that his company was possessed of other 'specialized' information about shippers and truckers. He further testified that lists of truckers were not contained in the Blue or Red Books and that to contact truckers his company was not dependent upon these two resources.

"The defendants were hired by plaintiff as truck dispatchers under the terms of the subject employment agreement to coordinate shipments of commodities with available trucks. In performing their duties as dispatchers the defendants used the resources provided by plaintiff, previously referred to, and had direct telephonic contact with the individual shippers and truckers. Before employment by plaintiff neither defendant had experience in the truck brokerage business and all skills and techniques in operating such business were acquired through plaintiff.

"Approximately two years after entering into the employment agreement the defendants were terminated by plaintiff and defendants almost immediately entered into a competing truck brokerage business in Bend, Oregon, under the corporate style known as Esquire Truck Brokerage, Inc. There was substantial evidence that the defendants started their brokerage with full awareness of the restrictive covenant in issue and, in fact, had secured legal advice as to their liabilities thereunder. The evidence was likewise substantial that the defendants have in the past and are continuing to contact numerous shippers and truckers whose identity and business practices necessarily came to defendants' knowledge during their employment by plaintiff. The competition to plaintiff is direct, irreparably damaging and, in the court's view, deliberately in violation of a viable contract.

"The language in *Kelite Products, Inc. v. Brandt, et al,* 206 Or 636, 294 P2d 320, a case of similar stance to the instant matter, seems particularly appropriate (at page 653):

" '4. As we said in *Eldridge et al v. Johnston,* supra, at page 405:

" ' "* * * It is elementary that public policy required that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when en-

tered into freely and voluntarily, shall be held sacred and shall be enforced by courts of justice, and it is only when some other overpowering rule of public policy * * * intervenes, rendering such agreement illegal, that it will not be enforced."

" 'The defendants in this case entered into the contracts in question freely and voluntarily; they read and understood the terms thereof. The termination of their employment was through no act of their employer, but by their own voluntary act, and after giving the notice required by the provisions of the agreement.

" 'Yet, as demonstrated by the record in this case, excerpts of which appear above, defendants, with callous indifference to their solemn contractual undertakings, immediately upon the termination of their employment proceeded to sell to regular customers of plaintiff the competitive products of their new employer; customers with whom they had transacted business as plaintiff's salesmen, and whose names, addresses, and requirements appeared upon the lists furnished defendants by plaintiff and added to by themselves. They seek to avoid the inequity involved in their transactions by a technical claim that the contracts which they signed are void because, as they allege, they are unlimited as to territory and time. Equity has but little patience with men who deliberately violate their solemn promises and will enforce their obligations if any reasonable basis therefor may be found.'

"The court is aware of the interruption of defendants' business the enforcement of the covenant may cause but this is a gamble that the defendants voluntarily undertook when they chose to ignore their contractual responsibilities to the plaintiff. The knowledge that they gained in their employment and the personal contact with valued shippers and truckers doing business with plaintiff afforded defendants an unfair advantage over plaintiff.

"The restriction applies to the conduct of a competing business 'in the State of Oregon for a period of two years from the date of termination.' The court is of the opinion that both the area and time are reasonable particularly

in view of the interstate character of plaintiff's business. It is true that defendants could lawfully compete with plaintiff by moving to a location without the State of Oregon but is this to say that plaintiff may not enforce its contract? The court thinks not.

"Plaintiff shall be entitled to a decree restraining and enjoining the defendants and each of them, from directly or indirectly engaging in a truck brokerage business within the State of Oregon for a period of two years from the termination of their employment, respectively.

"The employment agreement provides inter alia that the prevailing party shall be entitled to reasonable attorney's fees in the event of legal action being instituted arising out of the agreement. The enforcement of the restricted covenant in issue is within the terms providing for attorney fees. The parties stipulated that the court could award reasonable attorney fees without the receipt of testimony. The plaintiff asks for 'reasonable attorney fees as may seem just and proper.' The defendants have each asked for an award of $5,000 as reasonable attorney fees in the event they would have prevailed. This seems to constitute a judicial admission that $5,000 is a reasonable fee in each case. In view of the consolidation of the two cases for trial it would seem that $10,000 in attorney fees would be unreasonable. The court finds that a reasonable attorney fee should be assessed against each defendant in an amount of $2,500.

"The court is not unmindful that the plaintiff seeks not only an injunction but damages occasioned by defendants' acts. There was evidence of damage to plaintiff occasioned by defendants' conduct but the court is of the opinion that such evidence was insufficiently definite to justify an award of damages. Accordingly, none will be allowed."[3]

---

[3] As also held in *North Pacific Lbr. v. Moore,* 275 Or 359, 364-65, 551 P2d 431 (1976), decided after the decision by the trial court in this case:

"* * * The principle is stated in *Kelite Prod., Inc. v. Brandt et al,* 206 Or 636, 656, 294 P2d 320 (1956), adopting the following quotation from 9 ALR 1468:

" 'It is clear that if the nature of the employment is such as will bring the employee *in personal contact with the patrons or customers* of the employer, or enable him to acquire valuable information as to the nature and character of the business and *the names and requirements of the patrons or customers,* enabling him,

We agree with this opinion by the trial court and affirm the decree entered by it.

by engaging in a competing business in his own behalf, or for another, to take advantage of such knowledge of *or acquaintance with the patrons or customers of his former employer,* and thereby gain an unfair advantage, equity will interfere in behalf of the employer and restrain the breach of a negative covenant not to engage in such competing business, either for himself or for another, providing the covenant does not offend against the rule that as to the time during which the restraint is imposed, or as to the territory it embraces, it shall be no greater than is reasonably necessary to secure the protection of the business or good will of the employer.' " (Emphasis theirs)

*See also* Blake, *supra* n.2, at 658-59, as also quoted with approval in *North Pacific Lbr. v. Moore, supra* n.3, at 365-66.