Argued and submitted August 20, 2021, affirmed January 5, 2022

## OREGON PSYCHIATRIC PARTNERS, LLP,
an Oregon limited liability partnership,
*Plaintiff-Appellant,*

*v.*

## Kelley HENRY, RN, P.M.H.N.P.,
*Defendant-Respondent.*

Lane County Circuit Court
15CV08506; A173017

504 P3d 1223

This dispute regarding a noncompetition provision in an employment contract is before the Court of Appeals for the second time. Plaintiff contends that, in the bench trial that occurred on remand after the first appeal, the trial court erroneously decided an issue that was not properly before it, specifically the enforceability of the noncompetition provision under ORS 653.295(4)(b). Alternatively, plaintiff argues that the trial court wrongly placed the burden of proof on that issue on plaintiff, when it should have placed it on defendant. Finally, plaintiff argues that, in any event, based on the trial evidence, it was entitled to prevail on the merits as a matter of law. *Held*: On this record, the trial court did not err in considering whether the noncompetition provision in defendant's employment contract was enforceable under ORS 653.295(4)(b), as an issue in the second trial. The court also did not err, as a matter of statutory construction, in concluding that plaintiff had the burden of proof on that issue. Finally, plaintiff was not entitled to prevail on its claim as a matter of law; although the trial court could have found in plaintiff's favor, it was not required to do so on this record.

Affirmed.

Lauren S. Holland, Judge.

Wm. Randolph Turnbow argued the cause and filed the briefs for appellant.

Alexandra P. Hilsher argued the cause for respondent. Also on the brief were Mario D. Conte and Hershner Hunter, LLP.

Before Tookey, Presiding Judge, and James, Judge, and Aoyagi, Judge.

AOYAGI, J.

Affirmed.

**AOYAGI, J.**

This dispute concerning a noncompetition provision in an employment contract is before us for the second time. Plaintiff contends that, on remand after the first appeal, the trial court erroneously considered the enforceability of the noncompetition provision under ORS 653.295(4)(b)[1] when that issue was no longer properly before it. Alternatively, plaintiff argues that the trial court placed the burden of proof on that issue on the wrong party—plaintiff, instead of defendant—and that, in any event, plaintiff was entitled to prevail on the merits as a matter of law. For the following reasons, we affirm.

## BACKGROUND

Plaintiff Oregon Psychiatric Partners, LLP (OPP) operates a psychiatric clinic at which defendant used to work as a psychiatric-mental health nurse practitioner. After defendant left OPP, she opened her own practice, where she treated over 30 patients who she had previously treated at OPP. Plaintiff brought this action to enforce the noncompetition provision in defendant's employment contract, which states:

> "LIMITED NON-COMPETITION. Nurse Practitioner shall not provide services, directly or indirectly through any person or entity, to *any patients who have received services by Nurse Practitioner at OPP* or any predecessor entity for a period of two (2) years after termination of Nurse Practitioner's employment under this agreement within fifty (50) miles of Eugene, Oregon. Pre-existing patients established with Nurse Practitioner in her private practice prior to the date of this contract shall be exempt from this restriction."

(Emphasis added.)

In her answer, defendant asserted an "affirmative defense" that the noncompetition agreement "fails to satisfy the requirements of ORS 653.295 and is unenforceable." Generally speaking, ORS 653.295 provides that a

---

[1] Except as otherwise noted, all citations to ORS 653.295 are to the current version.

noncompetition agreement between an employer and an employee "is voidable and may not be enforced by a court of this state" unless five criteria are met, subject to certain exceptions.

The case was tried to the court. At the close of plaintiff's case-in-chief, defendant moved for "directed verdict," and the trial court decided the case in defendant's favor as a matter of law. *Oregon Psychiatric Partners v. Henry*, 293 Or App 471, 474, 429 P3d 399 (2018) (*Henry I*).[2] The trial court reasoned that the noncompetition provision was unenforceable under ORS 653.295(1), because at least one of the five criteria was not met, specifically the salary criterion in ORS 653.295(1)(d). *Id.* Plaintiff then asked about ORS 653.295(4)(b), which makes ORS 653.295(1) inapplicable to "[a] covenant not to solicit employees of the employer or solicit or transact business with customers of the employer." *Id.* The trial court ruled, with limited explanation, that the exception in ORS 653.295(4)(b) did not apply. *Id.*

Plaintiff appealed, and we reversed. We concluded that the noncompetition provision in defendant's employment contract was "at least in part enforceable" under ORS 653.295(4)(b), as a covenant not to solicit or transact business with customers of the employer. *Id.* at 472. In reaching that conclusion, we construed "customers of the employer" as used in ORS 653.295(4)(b) to mean, as applied here, patients who had received services from defendant at OPP's clinic and who would "have tended to return to OPP for services." *Id.* at 475-76, 480. Because there was some evidence of patients meeting that standard, we held that the trial court erred in dismissing plaintiff's claim as a matter of law. *Id.* at 483.

On remand, the case was again tried to the court. It appears from the record that the trial court understood that the parties would not be relitigating enforceability under ORS 653.295(1) and would litigate only the exception in ORS 653.495(4)(b), *i.e.*, would seek to prove that the 32 patients

_____

[2] "In a bench trial, a defendant's motion for directed verdict is better understood as an ORCP 54 B(2) motion for involuntary dismissal on the ground that upon the facts and the law the plaintiff has shown no ground for relief." *Henry I*, 293 Or App at 473 n 2 (internal quotation marks omitted).

in dispute were or were not OPP's "customers."[3] After hearing both parties' evidence on the "customer" issue, the trial court found in defendant's favor on the merits and dismissed plaintiff's claim. The court explained that plaintiff had not proved—that is, had not persuaded the court sitting as factfinder—that the patients who defendant treated at her new practice were OPP's "customers" within the meaning of ORS 653.295(4)(b). The court entered judgment for defendant accordingly.

## ANALYSIS

Plaintiff appeals. Our resolution of the first three assignments of error obviates the need to address the remaining assignments, and so we discuss only the first three. In its first assignment, plaintiff argues that the trial court erred in considering ORS 653.295 at all, because defendant verbally withdrew her affirmative defense under ORS 653.295 at the start of the second trial, such that the enforceability of the noncompetition provision ceased to be at issue in the case. At that point, in plaintiff's view, the court should have simply decided whether defendant breached the contract, without regard to ORS 653.295(4)(b). In its second assignment, plaintiff argues in the alternative that, if ORS 653.295(4)(b) remained at issue in the second trial, the court wrongly put the burden on plaintiff to prove that the patients at issue were OPP's "customers," when the burden should have been on defendant to prove that they were *not* OPP's "customers." Finally, in its third assignment, plaintiff contends that the evidence was such that plaintiff was legally entitled to a finding that the 32 patients were OPP's "customers."

In response, defendant argues that her statements to the trial court regarding her affirmative defense no longer being at issue were neither intended nor understood to take the "customer" issue out of the case. She maintains that it was plaintiff's burden to prove that the patients were OPP's "customers" under ORS 653.295(4)(b). And she

_____

[3] We omit from our discussion a second issue that everyone understood also would be litigated in the second trial—and that was litigated in the second trial—which was defendant's affirmative defense of waiver. That defense pertained only to five patients, and it was unrelated to the ORS 653.295 enforceability issue.

disagrees that plaintiff was legally entitled to prevail on the "customer" issue.

We begin with the second assignment of error, because who has the burden of proof under ORS 653.295(4)(b) has ramifications for the first assignment of error.

A.  *Burden of Proof Under ORS 653.295*

The parties disagree as to who has the burden of proof under ORS 653.295. As it did in the trial court, plaintiff takes the view that it was defendant's burden to prove that the noncompetition provision in her employment contract was unenforceable under ORS 653.295, including proving that the exception in ORS 653.295(4)(b) did not apply. If plaintiff is correct, that would mean that it was defendant's burden to prove that the 32 patients were *not* OPP's "customers." Defendant counters that the trial court correctly put the burden on plaintiff to prove that the 32 patients *were* OPP's customers. On appeal, defendant seems to take the position that the burden of proof is always on the employer under ORS 653.295, whether enforceability turns on ORS 653.295(1) or an exception such as ORS 653.295(4)(b). We understand defendant to have taken a different position in the trial court, essentially viewing it as the employee's burden to prove unenforceability under ORS 653.295(1) but the employer's burden to prove the applicability of an exception such as ORS 653.295(4)(b).

The distribution of the burden of proof under ORS 653.295 is ultimately a question of statutory construction. We therefore must consider the statute's text, context, and legislative history to discern the legislature's intent as to who bears the burden of proof. *See State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009) (describing process of statutory construction). Unfortunately, the parties have offered almost no statutory analysis in their briefing. Instead, each party quotes different lines from *Henry I* as suggesting that the other party bears the burden of proof. Although efforts to read into *Henry I* are understandable, we did not address the burden-of-proof issue in *Henry I*, as it was not squarely presented and the case was in a different posture than it is now. Suffice it to say that we do not view *Henry I*

as resolving—or purporting to resolve—who bore the burden of proof. We must decide that issue by construing the statute.[4]

To decide who bears the burden of proof under ORS 653.295, we rely almost entirely on the statutory text in context. Neither party has identified any helpful legislative history, and we have found little. In any event, there "is no more persuasive evidence of the intent of the legislature" than the text and context. *Gaines*, 346 Or at 171. We consider but are not constrained by the parties' readings of the statute, because we are "responsible for identifying the correct interpretation [of a statute], whether or not asserted by the parties." *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997).

ORS 653.295(1) provides that a noncompetition agreement between an employer and an employee "is voidable and may not be enforced by a court of this state *unless*" five criteria are met. (Emphasis added.) Essentially, those five criteria require that the agreement was presented in a certain manner and timeframe, that the employee is a person described in ORS 653.020(3), that the employer has a protectable interest, that the employee's salary exceeds a certain threshold, and that the employer took certain action within 30 days after the employment termination date. ORS 653.295(1)(a)-(e). If the five criteria are met, the agreement is enforceable under ORS 653.295(1). If the five criteria are not met, the agreement is unenforceable under ORS 653.295(1), which means that it may be enforced only if an exception to ORS 653.295(1) applies. As relevant here, one exception is ORS 653.295(4)(b), which provides that "[s]ubsections (1) and (2) of this section do not apply to *** [a] covenant not to solicit employees of the employer or solicit or transact business with customers of the employer."

---

[4] In lieu of addressing the statutory language, plaintiff also argues that the employer cannot have the burden of proving enforceability because it is not an "element" of breach of contract. *See Jensen v. Hillsboro Law Group, PC*, 287 Or App 697, 706 n 3, 403 P3d 455 (2017) ("In a breach of contract claim, the plaintiff must generally allege and prove the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach, and defendant's breach resulting in damage to plaintiff." (Internal quotation marks omitted.)). As discussed later, we do not view the elements of a breach-of-contract claim as dispositive of who bears the burden of proof under ORS 653.295.

Because it is necessary context, we begin with ORS 653.295(1). We have previously recognized the legal significance of a noncompetition agreement being "voidable," rather than "void," under ORS 653.295(1). *See Bernard v. S.B., Inc.*, 270 Or App 710, 719, 350 P3d 460, *rev den*, 358 Or 69 (2015) (explaining that the 2007 amendment to ORS 653.295(1), which changed "void" to "voidable," has "clear" legal consequences, even if the reason for the change is unknown). "'A voidable contract is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance.'" *Id.* at 718 (quoting *Restatement (Second) of Contracts* § 7 (1981)). "'[T]he transaction is valid and has its usual legal consequences until the power of avoidance is exercised.'" *Id.* (quoting *Restatement* § 7, comment e).

A noncompetition agreement is therefore "presumptively valid" under ORS 653.295, not void *ab initio*, and "an employee who wants [to] be relieved of what the employee believes to be an unenforceable noncompetition obligation must take affirmative steps to 'avoid' that obligation; otherwise, it remains valid." *Id.* at 718-19 (emphasis omitted). As such, if an employee never manifests an election to treat a noncompetition agreement as void, *i.e.*, never takes affirmative steps to avoid the obligation, the court should treat the agreement as valid. In such circumstances, there would be no reason for the court to consider enforceability under ORS 653.295.

But what happens when an employee *does* put enforceability under ORS 653.295 at issue? Is it the employer's burden to prove that the agreement is *enforceable*, or is it the employee's burden to prove that it is *unenforceable*? The answer to that question potentially affects how an employee must manifest their election to treat the agreement as void, as well as obviously affects the litigation of enforceability.

There is an argument for putting the burden of proof on the employee and, relatedly, requiring the employee to assert an affirmative defense of unenforceability under ORS 653.295. In other situations involving voidable contracts, such as contracts induced by fraud or resulting from mutual

mistake, it is normally the person who seeks to avoid the contract who bears the burden of proof. *See, e.g., Gardner v. Meiling*, 280 Or 665, 671, 572 P2d 1012 (1977) (a person alleging fraud as a basis to avoid a contract has the burden of proving each element of fraud); *Lesher v. Strid*, 165 Or App 34, 42, 996 P2d 988 (2000) (a mutual mistake of fact may render a contract "voidable by the adversely affected party," and treating plaintiff—the person seeking to avoid the contract—as bearing the burden of proof); *see also Intl. L. and W. Union v. Harvey Al. et al*, 226 Or 94, 97-98, 359 P2d 112 (1961) ("If the defendants wish to challenge the legality of the contract, we think they must do so by an affirmative pleading and proof in support thereof. We see no reason to depart from our well-established rule that where the illegality of a contract does not appear from plaintiff's own pleadings or proof, the burden to plead and prove any illegality is on the defendant.").

In this circumstance, however, the statutory text in context leads us to conclude that, once an employee takes affirmative steps manifesting an election to treat a non-competition agreement as void, the legislature intended the employer to bear the burden of proving the agreement's enforceability. When the legislature limits the enforceability of a certain type of contract by statute, we see no reason that the legislature may not also decide who will bear the burden of proof under the statute.

ORS 653.295(1) makes a noncompetition agreement voidable and unenforceable "unless" five criteria are met. If the statute said that a noncompetition agreement is voidable and unenforceable *if* certain criteria are met, that would be comparable to a contract being voidable *if* there was fraud in the inducement or *if* there was mutual mistake, and we might conclude that the employee has the burden to prove that the agreement is voidable and unenforceable. However, the statute says that a noncompetition agreement is voidable and unenforceable *unless* five criteria are met. That language suggests that, once an employee elects to treat a noncompetition agreement as void under ORS 653.295(1), the court must treat the agreement as void and unenforceable, *unless* the employer establishes that it is valid and enforceable.

Case law related to prior enacted versions of the statute supports that construction. *See Confederated Tribes (Siletz) v. Employment Dept.*, 165 Or App 65, 75, 995 P2d 580 (2000) ("Statutory context is not limited to the current version of a statute; it also includes prior enacted versions."); *see also Henry I*, 293 Or App at 476-77 (looking to the common law that existed in 2007 when ORS 653.295(4)(b) was enacted, as relevant to discerning the legislative intent). For decades, ORS 653.295 was a much simpler statute than it is now. For example, the 1977 version provided that "[a] noncompetition agreement entered into between an employer and his employe[e] is void and shall not be enforced by any court in this state unless the agreement is entered into upon the initial employment of the employe[e] with the employer." ORS 653.295(1) (1977). There were no exceptions or statutory limitations, except that the agreement had to have been "made in the context of an employment relationship or contract" and "entered into after July 22, 1977." ORS 653.295(2)-(3) (1977).

As a matter of case law, however, additional limitations on enforceability existed. The agreement had to be limited in duration or geography, had to be reasonable in scope so as to "afford only a fair protection to the interests of the party in whose favor it is made," and could not "be so large in its operation as to interfere with the interests of the public." *Rem Metals Corp. v. Logan*, 278 Or 715, 720, 565 P2d 1080 (1977) (internal quotation marks omitted). Significantly, under case law, the *employer* had the burden to prove enforceability. *See id*. at 722 ("[T]he burden of proof is upon the employer to establish the existence of trade secrets, information or relationships which pertain peculiarly to the employer, or other special circumstances sufficient to justify the enforcement of such a restrictive covenant." (Internal quotation marks omitted.)); *North Pacific Lumber Co. v. Moore*, 275 Or 359, 364, 551 P2d 431 (1976) ("To be entitled to the protection which a noncompetition covenant purports to provide, the employer must show that he has a legitimate interest entitled to protection." (Internal quotation marks omitted.)).

We have found no indication that, in enacting the 2007 amendments, the legislature intended to move the

burden of proof on enforceability from the employer to the employee. Indeed, the only indication is to the contrary, in that the purpose of the 2007 legislation was to provide additional protection to employees. *See* Exhibit L, House Judiciary Committee, SB 248, May 24, 2007 (written testimony of Dan Gardner, Commissioner of the Oregon Bureau of Labor and Industries).

We therefore conclude that, once an employee takes affirmative steps to manifest an intention to treat a noncompetition agreement as void, it is the employer's burden to prove that the agreement is enforceable. There are two means for the employer to establish enforceability: either (1) prove that the five criteria in ORS 653.295(1) are satisfied, or (2) prove that the agreement comes within an exception to ORS 653.295(1), such as ORS 653.295(4)(b). We see no way to read the statute as putting the burden on the *employer* to prove enforceability under ORS 653.295(1) but putting the burden on the *employee* to disprove the applicability of exceptions to ORS 653.295(1), such as ORS 653.295(4)(b).

The trial court therefore did not err in placing the burden of proof on the "customer" issue on plaintiff, rather than defendant. As we held in *Henry I*, the noncompetition provision in defendant's employment contract was enforceable to the extent that defendant treated patients at her new practice who were OPP's "customers" within the meaning of ORS 653.295(4)(b), and, for the reasons explained above, it was plaintiff's burden to prove that the patients in dispute were OPP's "customers."

## B.   *Defendant's Withdrawal of Her Affirmative Defense*

With the burden-of-proof issue resolved, we turn to the first assignment of error, in which plaintiff contends that defendant's "withdrawal" of her "affirmative defense" at the beginning of the second trial took the customer issue out of the case altogether. The thrust of plaintiff's argument—although never stated directly this way—is that the noncompetition provision was presumptively valid under *Bernard* and had to be treated as valid, without any consideration of ORS 653.295, once defendant withdrew her affirmative defense under ORS 653.295.

If defendant had advised the trial court on remand that she was no longer challenging the enforceability of the noncompetition provision, *regardless* of whether the criteria in ORS 653.295(1) were met and *regardless* of whether the 32 patients were OPP's customers under ORS 653.295(4)(b), then plaintiff would be correct. Such a statement would effectively withdraw defendant's prior election to treat the agreement as void. At that point, under *Bernard*, it would not be appropriate for the trial court to consider ORS 653.295 enforceability.

But that is not what happened. What happened on remand is somewhat complicated to describe, because defendant made some inartful statements in her opening statement for the second trial. Matters are further complicated by plaintiff's mistaken view that defendant bore the burden of proof under ORS 653.295—a premise that is intertwined with plaintiff's other arguments on appeal—as well as by defendant's own mistaken view in the trial court that she bore the burden of proof under ORS 653.295(1), even though she correctly viewed plaintiff as bearing the burden of proof under 653.295(4)(b). We endeavor to explain the situation as concisely as possible.

Both parties filed trial briefs for the second trial. Those briefs addressed a variety of issues, but, as relevant here, regarding ORS 653.295, both parties described the *Henry I* decision to the court and framed the issue for the second trial as being whether 32 patients who defendant saw at her new practice were OPP's "customers" within the meaning of ORS 653.295(4)(b). The parties disagreed as to who bore the burden of proof on that issue—plaintiff maintained that it was defendant, while defendant maintained that it was plaintiff. But neither party expressed any intention to relitigate enforceability under ORS 653.295(1), an issue that was decided in defendant's favor in the first trial and not addressed in *Henry I*. Plaintiff had briefed that issue in its trial brief for the first trial, giving significance to its omission from plaintiff's trial brief for the second trial.

With their trial briefs filed, the parties gave opening statements. Plaintiff said nothing to suggest that it intended to relitigate enforceability under ORS 653.295(1), focusing

entirely on the customer issue under ORS 653.295(4)(b). Defendant then gave her opening statement. During that statement, defendant told the trial court that her affirmative defense under ORS 653.295(1) that "was a significant issue in the first trial" was "no longer at issue," that it would not be pursued or argued in the second trial, and that the parties would instead be litigating the "customer" issue under ORS 653.295(4)(b) in accordance with *Henry I*. Defendant also described herself as agreeing with plaintiff that the agreement was "enforceable." At the same time, defendant was unequivocal that she was not conceding that the 32 patients were OPP's "customers," that she contested their "customer" status, and that plaintiff bore the burden of proof on that issue.

Defendant's oral statements are somewhat confusing, in that ORS 653.295(4)(b) would be irrelevant if defendant was conceding enforceability under ORS 653.291(1). But it is clear from defendant's trial brief that she was not conceding enforceability under ORS 653.291(1)—rather, she was operating on the understanding that ORS 653.295(1) was simply no longer in dispute and no longer at issue. That is further shown by later statements that defendant made, including telling the court that she was "not arguing that the contract is not enforceable," because "[t]hat question was decided by the Court of Appeals," and that her affirmative defense that the contract is unenforceable under ORS 653.295(1) was "clearly rendered moot by the Court of Appeals decision."

In the context of her trial brief and overall statements, it is clear that defendant was using the language of *Henry I* to discuss enforceability. In *Henry I*, we repeatedly described the noncompetition provision in defendant's contract as "at least in part enforceable" under ORS 653.295(4)(b), *i.e.*, enforceable to the extent that the factfinder found that some or all of the 32 patients were OPP's "customers" within the meaning of ORS 653.295(4)(b). 293 Or App at 472, 475 & n 3. It is also clear that defendant perceived ORS 653.295(1) to be irrelevant after *Henry I*, leaving only ORS 653.295(4)(b) to litigate—even though *Henry I* did not actually preclude the parties from relitigating ORS 653.295(1). *See Henry I*,

293 Or App at 475 n 3 (explaining that we did not need to address whether the noncompetition provision in defendant's contract was enforceable under ORS 653.295(1), *i.e.*, whether the trial court erred in its application of the salary criterion in ORS 653.295(1)(d), given our holding that the provision was "at least in part enforceable as a nonsolicitation agreement under ORS 653.295(4)(b)," which itself made dismissal improper). Whatever led to defendant's particular understanding of the posture of the case on remand—overreading *Henry I*, misconceiving the relationship between ORS 653.295(1) and (4)(b), or simply assuming that plaintiff was accepting the trial court's prior decision on ORS 653.295(1) and did not want to relitigate it—defendant ended up making some confusing remarks in her opening statement.

We are unpersuaded, however, that those remarks had the effect of taking the "customer" issue out of the case. As previously discussed, defendant had to "take affirmative steps" to manifest an election to treat the noncompetition provision in her employment contract as void, *Bernard*, 270 Or App at 718, after which plaintiff bore the burden to prove that the provision was enforceable. Defendant was required to "take affirmative steps" to avoid the noncompetition provision in her contract—but she was not required to plead an *affirmative defense*. Indeed, requiring an employee to plead unenforceability as an affirmative defense would be procedurally inconsistent with the fact that it is the employer who must prove enforceability once the issue is raised.[5]

We decline to speculate as to the different ways—or the "best" way—that an employee might manifest an election to treat a noncompetition agreement as void, especially because that is an issue that neither party has addressed. For present purposes, what matters is that defendant adequately manifested her election and never withdrew that election, even though she withdrew her "affirmative defense."

---

[5] Because enforceability under ORS 653.295(1) was not relitigated in the second trial, we need not consider and express no opinion on whether, had that issue been relitigated, the trial court could have properly placed the burden of proof under ORS 653.295(1) on defendant, as something that she voluntarily assumed. The only burden-of-proof issue that the trial court decided in the second trial was who bore the burden of proof under ORS 653.295(4)(b), which was a contested issue.

Defendant initially manifested her election by pleading an affirmative defense. She withdrew that affirmative defense at the start of the second trial, possibly based on a misunderstanding of the posture of the case on remand, but she continued to manifest her intention to treat the noncompetition provision as void *except* insofar as it was enforceable under ORS 653.295(4)(b). That is, she accepted the noncompetition provision as "at least in part enforceable" under *Henry I*, but only to the extent that plaintiff proved that some or all of the 32 patients were OPP's "customers." Defendant never said anything that reasonably could be understood as conceding enforceability under ORS 653.295(1), or as conceding enforceability under ORS 653.295(4)(b) regardless of whether the patients were OPP's "customers." Defendant also was unequivocal in her position that plaintiff bore the burden of proof on the "customer" issue.

Notably, defendant was not the only one confused about the posture of the case on remand. Plaintiff has explained that, after receiving our decision in *Henry I*, it expected the trial to resume where it had left off and was surprised and somewhat discombobulated when the court started a new trial. That would suggest that plaintiff did not intend to relitigate ORS 653.295(1) enforceability—an issue on which the trial court had previously ruled against it as a matter of law, and which we did not address in *Henry I*—and instead intended to litigate only ORS 653.295(4)(b) in the second trial. Plaintiff's trial brief for the second trial and opening statement in the second trial suggest the same.

Under the circumstances, the trial court reasonably understood that, for purposes of the second trial, both parties accepted that the noncompetition provision in defendant's employment contract was unenforceable under ORS 653.295(1), but that it was enforceable under ORS 653.295(4)(b) as to those patients who were OPP's "customers," and that the issue to be litigated in the second trial was which, if any, of the 32 patients were OPP's "customers." As such, we cannot agree with plaintiff that the trial court erred in "considering" ORS 653.295(4)(b) in the second trial.

If plaintiff was confused as to why ORS 653.295(4)(b) was still at issue after defendant gave her opening statement,

it was incumbent on plaintiff to make an objection or otherwise bring the procedural question to the trial court's attention and secure a ruling. *See* ORAP 5.45(3) ("Each assignment of error must identify precisely the legal, procedural, factual, or other ruling that is being challenged."). That also would have given defendant the opportunity to clarify any potential ambiguity in her position. Instead, both parties proceeded to try the "customer" issue—disagreeing only as to who bore the burden of proof and who should prevail—and the trial court decided that issue on the merits, as contemplated by *Henry I*. We reject the first assignment of error.

C.   *Plaintiff's Asserted Entitlement to Prevail on the Merits*

Finally, in its third assignment of error, plaintiff argues that, even if ORS 653.295(4)(b) was at issue and plaintiff bore the burden of proof—as we have held is the case—the trial court "erred in finding that OPP did not meet the burden of proving the 'customer' status of each patient." *See Peiffer v. Hoyt*, 339 Or 649, 658-59, 125 P3d 734 (2005) (explaining that, in a civil case tried to the court, the plaintiff may argue on appeal that it should have prevailed on its claim as a matter of law, without having moved for judgment as a matter of law, because preservation would serve little or no practical purpose in such circumstances). Having reviewed the evidence as to the "customer" issue, including considering the various legal points on which the parties disagree, we conclude that the trial court *could* have found in plaintiff's favor on the "customer" issue but that it was not *required* to find in plaintiff's favor as a matter of law.[6]

Affirmed.

---

[6] At the end of its arguments on the first four assignments of error, plaintiff summarily asserts, "Alternatively, this court should exercise its discretion to conduct a limited *de novo* review of any factual issue in dispute." We deny the request for *de novo* review. *See* ORS 19.415(3) (regarding when *de novo* review is available); ORAP 5.40(8)(c)‑(d) (regarding considerations for *de novo* review).