Argued and submitted August 9, affirmed December 7, 2005

Arthur McGEE,
*Respondent,*

*v.*

The COE MANUFACTURING COMPANY,
an Ohio corporation
authorized to do business in the State of Oregon,
*Appellant.*

C033921CV; A126214

125 P3d 26

Richard N. VanCleave argued the cause for appellant. With him on the briefs were Bradley F. Tellam and Barran Liebman LLP.

Roger Hennagin argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Collins, Judge pro tempore.

EDMONDS, P. J.

## EDMONDS, P. J.

This case involves the issue whether plaintiff can enforce the provisions of an employment agreement against his employer when part of the consideration for the agreement involves a noncompetition covenant. Defendant invokes the provisions of ORS 653.295, arguing that, because the employment agreement was entered into during the course of plaintiff's employment, it is unenforceable. The trial court granted summary judgment to plaintiff, and defendant appeals. We affirm.

■ Summary judgment is appropriate if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. ORCP 47 C. In reviewing whether that standard has been met, we review the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the party opposing the motion. *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997).

Plaintiff was hired by defendant in 1973 to work as its chief engineer. In 1996, plaintiff planned to retire and informed defendant of that fact. To induce plaintiff to continue in its employ, defendant offered and plaintiff agreed to a two-year, part-time employment contract "following your retirement on August 3, 1996."[1] The employment contract provided that plaintiff would work up to 300 hours per year at $1,040 per month, and would receive medical benefits equivalent to what he had received as a full-time employee during the two years of the contract and for an additional eight years following. The contract also specified that

> "[y]our work will not include any production engineering, field engineering or field service but will include periodic review of development activities, concept development, preliminary engineering design, prototype design assistance, technical consultation, and occasional technical sales assistance. During this period Coe will hope to fully utilize your knowledge and technical expertise."

---

[1] Plaintiff signed the employment agreement on July 29, 1996, but the parties agree that it did not become effective until the day after his retirement.

The part-time employment contract was also subject to plaintiff's entering into a noncompetition agreement with defendant. The noncompetition agreement recited that "[plaintiff] intends to retire on August 3, 1996, and [defendant] desires to have an agreement with [plaintiff] not to compete" and provided that defendant would pay plaintiff $30,000 per year for a period of ten years as consideration for the agreement, to begin on August 3, 1996. The noncompetition agreement specified that plaintiff would not directly or indirectly compete or disclose information he learned or obtained while working for defendant that was not already available to the public. In the event of plaintiff's death, payments due under the contract would be made to a person specified by plaintiff, provided that his estate was bound by the terms of the agreement. In 1998, the part-time employment contract was modified by the parties to extend it an additional eight years, until 2006. Under the modification, plaintiff agreed to work up to 200 hours per year for $1,200 per month, with medical benefits to continue throughout the period of the contract and up to eight years following its expiration.

Defendant made the payments required under the noncompetition agreement until 2003, when it declared the agreement "void and not enforceable" under ORS 653.295. ORS 653.295 provides, in part:

"(1) A noncompetition agreement entered into between an employer and employee is void and shall not be enforced by any court in this state unless the agreement is entered into upon the:

"(a) Initial employment of the employee with the employer; or

"(b) Subsequent bona fide advancement of the employee with the employer.

"(2) Subsection (1) of this section applies only to noncompetition agreements made in the context of an employment relationship or contract and not otherwise.

"* * * * *

"(6) As used in this section:

"* * * * *

> "(c) 'Noncompetition agreement' means an agreement, written or oral, express or implied, between an employer and employee under which the employee agrees that the employee, either alone or as an employee of another person, shall not compete with the employer in providing products, processes or services, that are similar to the employer's products, processes or services for a period of time or within a specified geographic area after termination of employment."

Under defendant's view of the statute, the noncompetition agreement with plaintiff is unenforceable because it was not entered into at the time of plaintiff's initial employment with defendant.

■ Plaintiff sued defendant, alleging claims for breach of contract and accord and satisfaction. Plaintiff then moved for summary judgment, arguing that the agreement was not subject to ORS 653.295 because it was not made in the context of an employment relationship, but to settle a legal claim, and was therefore exempt under ORS 653.295(2). In the alternative, plaintiff argued that, because the part-time employment contract began on August 3, 1996, after plaintiff's retirement, the part-time employment was "new" employment, and therefore the noncompetition agreement was entered into on the "initial employment" of the employee. Defendant responded that "[plaintiff] retires from the full-time position August 2nd. He starts his new part-time job August 3. There's never a break in employment. There is no—there is no gap * * *." The court granted plaintiff's motion for summary judgment. Defendant appeals, arguing that the trial court erroneously applied ORS 653.295.

■■ The issue in this case turns on the meaning of the words "initial employment" in ORS 653.295(1)(a). In interpreting a statute, our task is to discern the intent of the legislature. Under the statutory construction analysis required by *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), we examine the language of the statute in context and, if necessary, its history and other aids to construction. The word "initial" is defined, in part, as "**1 :** of or relating to the beginning : marking the commencement : INCIPIENT, FIRST * * * **2 :** placed or standing at the beginning" *Webster's Third New Int'l Dictionary* 1163 (unabridged ed

2002). When the word "initial" is used with the word "employment," the words refer to the beginning or commencement of an employment relationship with an employer. But here, "initial employment" could refer to the employment relationship that began in 1973 or to the relationship that began in 1996 after plaintiff indicated that he intended to retire.

Consequently, we look behind the words of the statute to the underlying legislative history. One of the sponsors of the original bill that became ORS 653.295 referred to noncompetition agreements as a "noxious and disturbing practice," particularly in cases where an employee "can be so bound by an employer without any guarantees, any additional benefits, or any other item of worth accruing to the employer [sic] as the result of signing such an agreement." Tape Recording, House Committee on Business and Consumer Affairs, HB 2615, Apr 11, 1977, Tape 19, Side B (statement of Rep Grattan Kerans).

Relying on the above legislative history, we held in *Pacific Veterinary Hospital v. White*, 72 Or App 533, 537-38, 696 P2d 570 (1985), that a noncompetition agreement was unenforceable because it had not been entered into as part of the initial employment relationship between the parties. In that case, the defendant, a veterinarian, entered into a six-month written employment agreement that contained a noncompetition clause. Two months after that agreement expired, the parties executed a second employment agreement containing a different noncompetition clause. The day after the term of that agreement expired, the parties entered into a third employment agreement containing a noncompetition clause identical to the noncompetition clause in the second employment agreement. After the term of the third agreement expired, the defendant continued to work for the plaintiff until the plaintiff terminated his employment nine months later. After his termination, the defendant purchased a veterinary practice within the proscribed area defined by the noncompetition agreement.

The trial court in *Pacific Veterinary Hospital* held that the noncompetition provision in the third employment agreement was unenforceable because it was entered into after the defendant's initial employment with the plaintiff.

On appeal, we affirmed. Relying on the legislative history underlying ORS 653.295, we observed that House Bill 2615 (1977), the bill that eventually led to the enactment of ORS 653.295, was initially phrased to invalidate *any* noncompetition agreement between an employer and an employee and was inspired by the belief that noncompetition agreements in the context of employment relationships are contrary to public policy and ought to be prohibited entirely. However, during the consideration of the proposed law, representatives from the business community testified as to the reasonableness of noncompetition agreements in some circumstances. In response, the legislature enacted ORS 653.295. We concluded, based on the legislative history, that, by enacting the statute, "the legislature intended to protect employe[e]s from surprise and oppressive tactics by providing that any noncompetition agreement other than the one entered into at the initial employment is void and unenforceable." *Pacific Veterinary Hospital*, 72 Or App at 537-38. We then undertook to carry out the legislature's intent with regard to the circumstances before us. We reasoned that, "during the course of defendant's employment, plaintiff imposed a more onerous noncompetition agreement than one entered into on defendant's initial employment." *Id.* at 538. It followed then that the noncompetition clause entered into in the third employment agreement on which the plaintiff relied was unenforceable under the statute.

Our reasoning in *Pacific Veterinary Hospital* in light of the legislative history of ORS 653.295, informs the analysis in this case. We conclude that, because plaintiff's new employment relationship with defendant began after he retired and because his employment was as a consultant rather than as a chief engineer, the noncompetition agreement is enforceable under the statute. Here, plaintiff gave notice to defendant that he intended to retire on August 3, 1996. With his retirement on that day, plaintiff's employment relationship as chief engineer with defendant ended. But for the new agreement to employ plaintiff as a consultant, there would have been no employment relationship between them. The subsequent agreement to employ plaintiff in a different capacity as a consultant operated to create a new employment relationship that had not existed before.

Under the agreement that employed him as a consultant, plaintiff's job responsibilities and working hours decreased dramatically, resulting in a completely different employment relationship from the one that had existed previously.

Because plaintiff's employment relationship with defendant as chief engineer ended with his retirement on August 3, before he entered into an employment agreement to work as a consultant, the circumstances of this case are unlike those in *Pacific Veterinary Hospital*, where the defendant continued to work for the plaintiff as a veterinarian, albeit subject to different terms. In that case, unlike this one, the noncompetition agreement relied on by the plaintiff was entered into "during the course" of the plaintiff's continuing employment of him as a veterinarian. The initial employment relationship in that case never ceased. Also, our reasoning is consistent with the legislature's intent to protect employees from the coercive effect of employers requiring a noncompetition agreement in the midst of the employment term as a condition of continued employment. Here, plaintiff intended to retire. Because of that fact, defendant lacked the leverage of a continuing employment relationship that concerned the legislature. For those reasons, we conclude that ORS 653.295 does not render the parties' noncompetition agreement unenforceable.

Affirmed.