Argued and submitted September 17, 2014, affirmed May 6, petition for review denied October 8, 2015 (358 Or 69)

Carol BERNARD,
*Plaintiff-Appellant,*

*v.*

S.B., INC.,
an Oregon corporation,
dba Sherman Brothers Heavy Trucking,
*Defendant-Respondent.*

Lane County Circuit Court
161208924; A154386

350 P3d 460

Michael Vergamini argued the cause and filed the briefs for appellant.

Laura T.Z. Montgomery argued the cause for respondent. With her on the brief was Gleaves Swearingen, LLP.

Before DeVore, Presiding Judge, and Ortega, Judge, and Garrett, Judge.*

---

* Ortega, J., *vice* Haselton, C. J.

GARRETT, J.

**GARRETT, J.**

Plaintiff brought this action for intentional interference with economic relations, misrepresentation, and injunctive relief, based on allegations that defendant, her former employer, threatened to enforce an invalid noncompetition agreement. Plaintiff's legal theories rely on her contention that her noncompetition agreement with defendant is unenforceable under ORS 653.295 because defendant failed to notify her two weeks before she started work that a noncompetition agreement would be required. The trial court granted summary judgment in favor of defendant. As explained below, we conclude that plaintiff's evidence established, at most, that the noncompetition agreement was voidable (not void) but remained valid and in effect at the time that defendant invoked it. Plaintiff, therefore, failed to raise a triable issue of fact as to whether defendant acted with an "improper means" or for an "improper purpose"—a necessary element of the intentional interference claim— when defendant invoked its contractual rights. Accordingly, the trial court correctly granted summary judgment to defendant on that claim. As to the misrepresentation claim, we reject plaintiff's arguments without written discussion. We reject plaintiff's claim for injunctive relief as moot.[1]

The relevant facts are undisputed. Plaintiff commenced her employment with defendant, a trucking company, on June 9, 2008. She was employed in defendant's logistics department, where she had access to confidential customer and pricing information. On or about the date that plaintiff began her employment, she executed two agreements, a "Confidentiality Agreement" and a "Noncompetition and Nonsolicitation Agreement." In the former agreement, plaintiff promised that she would not, during and after her employment with defendant, disclose any of defendant's confidential information (as defined in the agreement) without defendant's consent. The Confidentiality Agreement is not at issue in this appeal. In the latter agreement, plaintiff

---

[1] To qualify for injunctive relief, a plaintiff "must show that such conduct is probable or threatened." *Bates v. Motor Vehicles Div.*, 30 Or App 791, 794, 568 P2d 686 (1977). Because the period of time covered by the challenged noncompetition agreement has expired, there is "no appreciable threat of continuing harm." *Id.*

promised that, during her employment and for a period of three years after the termination of her employment, she would not compete directly or indirectly with defendant, solicit its customers, or recruit its employees.

Plaintiff voluntarily left defendant's employment on August 3, 2011. She began working for T. R. Points Trucking, Inc., a competitor of defendant, on August 8, 2011. At about the same time, defendant learned of her new employment and made contact with both plaintiff and her new employer, reminding them of plaintiff's contractual obligations to defendant. On August 13, plaintiff voluntarily quit her job with T. R. Points. Apparently unaware of that departure, defendant's attorney sent a letter to plaintiff and T. R. Points, dated August 24, describing plaintiff's contractual obligations to defendant.

Plaintiff sued defendant for intentional interference with economic relations and misrepresentation. She also requested injunctive relief. In her complaint, plaintiff alleged that defendant entered into the noncompetition agreement in bad faith and sought to enforce the agreement, which it knew to be unenforceable, by intimidation and threat of legal action.

Defendant moved for summary judgment, arguing, among other things, that plaintiff had failed to demonstrate that the agreement is unenforceable; that plaintiff had failed to show any "interference" with her relationship with T. R. Points; that defendant had sought to enforce *only* the nonsolicitation and confidentiality provisions, which are not subject to ORS 653.295; and that plaintiff had failed to show any misrepresentation. Defendant produced testimony from one of its executives that he believed the noncompetition agreement was valid and unenforceable at the time that defendant invoked it.

In her response to defendant's motion, plaintiff further alleged that the noncompetition agreement is unenforceable because it was not provided to her two weeks prior to the commencement of her employment with defendant, as required by ORS 653.295(1)(a)(A). The trial court granted defendant's motion and dismissed the complaint. Plaintiff appeals.

In reviewing whether summary judgment is appropriate, we review the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the party opposing the motion. *McGee v. Coe Manufacturing Co.*, 203 Or App 10, 12, 125 P3d 26 (2005). Summary judgment is appropriate if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. ORCP 47 C. There are no issues of material fact if, based on the record, "no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." *Id.*

We first address plaintiff's claim for intentional interference with economic relations. That claim requires a plaintiff to prove: "(1) the existence of a valid business relationship or expectancy, (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and the damage to economic relations, and (6) damages." *Uptown Heights Associates v. Seafirst Corp.*, 320 Or 638, 651, 891 P2d 639 (1995).

The parties' arguments center on the fourth element.[2] Plaintiff argues that defendant acted through an "improper means" or had an "improper purpose" when it threatened to enforce the noncompetition agreement, which defendant knew to be unenforceable. Defendant argues that plaintiff failed to make any showing that the noncompetition agreement is unenforceable or that defendant had any reason to believe so; thus, plaintiff cannot show any improper means or improper purpose in defendant's invocation of its contractual rights.

---

[2] With reference to the second and fifth elements, defendant also argues that it "did not interfere" with plaintiff's new employment or cause her any damages because the "undisputed facts show [plaintiff] voluntarily quit her job" with T. R. Points "before [defendant] made the communications at issue." That argument assumes that the only "communication[] at issue" was the August 24 letter. The summary judgment record contains evidence, however, that defendant contacted plaintiff and T. R. Points telephonically regarding plaintiff's alleged violation of her noncompetition and nonsolicitation agreements *before* plaintiff made the decision to leave T. R. Points. That evidence would suffice to raise triable issues of fact as to both the "interference" and the "causation" elements.

As a matter of law, a party invoking the express terms of a contract has a "legitimate" purpose and does not expose itself to liability for interference with economic relations. *Uptown Heights*, 320 Or at 651-52. That is so because, under those circumstances, a party who has interfered with another party's economic relations has done so under the express terms of the "written contractual remedy." *Id.* at 652. To rule otherwise would "contravene public policy and undermine the stability of contractual relations" as it would be "anomalous to hold that a party to a contract nonetheless must defend a tort claim" in the event that that party "did precisely what [it] was entitled to do under the contract." *Id.*

Plaintiff's legal theory is that the rule in *Uptown Heights* does not aid defendant because the noncompetition agreement is unenforceable under ORS 653.295, which provides, in relevant part:

"(1)   A noncompetition agreement entered into between an employer and employee is voidable and may not be enforced by a court of this state unless:

(a)(A)   The employer informs the employee in a written employment offer received by the employee at least two weeks before the first day of the employee's employment that a noncompetition agreement is required as a condition of employment[.]"

Defendant responds that, although plaintiff *argued* in her summary judgment brief that she was not given the required two weeks' notice under the statute, plaintiff failed to include any such allegation in her complaint and, moreover, failed to produce any evidence to support that assertion in response to defendant's summary judgment motion. Furthermore, defendant argues, in addition to failing to allege the facts necessary to prove that the noncompetition agreement was "voidable" under the statute, plaintiff also failed to produce any evidence that the agreement was, in fact, voided. That is, even if plaintiff had managed to raise a genuine issue as to the voidability of the agreement, defendant reasons, plaintiff failed to allege or adduce any evidence to show that the agreement was void and unenforceable at the time that defendant invoked it.

We first consider whether there is a genuine issue of fact as to whether the noncompetition agreement was voidable under ORS 653.295(1)(a)(A). That inquiry hinges on whether plaintiff, at least two weeks before she started work for defendant, was given notice that the noncompetition agreement was a condition of her employment.

Defendant argues that plaintiff failed to allege anywhere, or produce evidence to show, that she was not given such notice. Our review of the record confirms that plaintiff made no express allegation as to that issue. In her declaration submitted in opposition to defendant's summary judgment motion, however, plaintiff stated, "On June 9, 2008, I was hired as a logistics coordinator for [defendant]. On or after the day of hire, I was provided an employment handbook and also a non-compete and non-solicitation agreement, which I was required to sign as a condition of employment." The question is whether plaintiff raised a triable issue of fact for purposes of avoiding summary judgment. Viewing the evidence in the light most favorable to plaintiff, a fair construction of her declaration is that plaintiff was told about the noncompetition agreement "[o]n or after the day of hire," *i.e.*, not *before* that date. So understood, plaintiff's declaration is sufficient to raise a triable issue as to whether defendant complied with ORS 653.295(1)(a)(A). Put differently, there is a genuine issue of fact as to whether the noncompetition agreement was "voidable."

That does not end the analysis, however. Even if the agreement was voidable, defendant argues, plaintiff did nothing to void it; thus, at the time that defendant communicated with plaintiff and T. R. Points regarding the noncompetition agreement, the agreement was still perfectly valid. Plaintiff has identified no steps she has taken to void the agreement. Further, she argues that it is not necessary to determine whether she has voided the agreement because she is not required to do so in order to prevail on her claim for intentional interference. That is so, plaintiff argues, because the statute provides that a noncompetition agreement that fails the notice requirement is "voidable *and* may not be enforced by a court of this state" (emphasis added). In other words, plaintiff argues that, regardless of whether she took steps to "void" the "voidable" contract, it is still

a contract that "may not be enforced" in an Oregon court. Thus, in plaintiff's view, defendant has sought to enforce an unenforceable agreement.

The parties present an issue of statutory construction. Plaintiff interprets the statute to set up an absolute bar to an employer's invocation (in or out of court) of any noncompetition agreement that was executed without the required two weeks' notice. Defendant argues that plaintiff's interpretation ignores the legislative choice to make such an agreement merely *voidable*, not void. Defendant argues that the "may not be enforced" language must be read in conjunction with the word "voidable" in the statute; thus, a voidable noncompetition agreement must first be voided in order to be unenforceable.

In resolving this interpretive dispute, we apply the methodology first outlined in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and later refined in *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). First, we examine the text of the statute— the "starting point" and "best evidence" of the legislature's intent. *PGE*, 317 Or at 610. In evaluating statutory text, we consider rules of statutory construction that "bear directly on how to read the text." *Id.* at 611. Some of these rules are found in statute, while others are found in case law, including the rule that words of common usage "typically should be given their plain, natural, and ordinary meaning." *Id.* We may consult legislative history after "examining text and context" of a statute, "where that legislative history appears useful to the court's analysis." *Gaines*, 346 Or at 172. If the legislature's intent remains ambiguous after an examination of text, context, and legislative history, we "may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Id.*

In this case, the text of ORS 653.295(1)(a)(A) does not unequivocally support either side's position. Plaintiff contends that defendant's interpretation implicitly adds the phrase "if voided" into the statutory text (*i.e.*, "voidable and [if voided] may not be enforced by a court of this state"). But plaintiff's interpretation adds a term as well—the word "also," as evidenced by plaintiff's description of the statute

as setting forth "two separate principles of recission, voidable *and also* unenforceable." (Emphasis added.)

The statutory text read "void" until the statute was amended in 2007 to read "voidable" under Senate Bill (SB) 248 (2007). Or Laws 2007, ch 902, § 2. "Void" means "of no legal force or effect and so incapable of confirmation or ratification." *Webster's Third New Int'l Dictionary* 2562 (unabridged ed 2002). "Voidable," by contrast, means "capable of being voided" or "capable of being adjudged void, invalid, and of no force[.]" *Id.* "A voidable contract is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance." *Restatement (Second) of Contracts* § 7 (1981). "The propriety of calling a transaction a voidable contract rests primarily on the traditional view that the transaction is valid and has its usual legal consequences until the power of avoidance is exercised." *Id.* at § 7, comment e.

Thus, the 2007 amendment to ORS 653.295(1)(a)(A) changed the presumptive status of noncompetition agreements that do not comport with all of the statutory requirements. Prior to the 2007 change, such a contract was "void," *i.e.*, of no effect. After the 2007 change, such a contract is voidable, *i.e.*, a valid act that may be voided. Put differently, the change to "voidable" means that an employee who wants be relieved of what the employee believes to be an unenforceable noncompetition obligation must take affirmative steps to "avoid" that obligation; otherwise, it remains valid.

The change from "void" to "voidable" was just one of several changes that SB 248 made to the statute. The bill narrowed the class of employees who may be required to execute a noncompetition agreement, limited the duration of such agreements to two years following termination, and required that prospective employees be given two weeks' advance notice that a noncompetition agreement would be a condition of employment. The legislative history makes it clear that the purpose of the bill was to address the perceived overuse of noncompetition agreements for lower-level employees and to ensure that such agreements would restrict only employees who had access to trade secrets or

other confidential, sensitive information belonging to the employer. *See* Staff Measure Summary, House Committee on Elections, Ethics and Rules, SB 248, June 19, 2007.

The purpose of the change from "void" to "voidable" is not addressed in the legislative history of SB 248. The legal consequences of that change, however, are clear. The change evidences a legislative intent (perhaps in exchange for restricting the permissible scope of noncompetition agreements and narrowing the class of eligible employees) to treat noncompetition agreements—even those that do not strictly comply with the new statutory requirements—as *presumptively valid* rather than void *ab initio.*

With that history and context in mind, we are persuaded that defendant has the better interpretation of how the statute applies to this case. If the legislature had intended to provide that a noncompetition agreement executed in violation of the two-week notice requirement is absolutely unenforceable, there would have been no significance to the legislature's choice between "void" and "voidable." But, along with enacting the two-week notice requirement, the legislature made a choice in 2007 to replace the former term with the latter and we must give effect to that choice. *State v. Stamper*, 197 Or App 413, 418, 106 P3d 172, *rev den*, 339 Or 230 (2005) (noting that "we assume that the legislature did not intend any portion of its enactments to be meaningless surplusage"). It would frustrate the intent of the legislature to hold that a noncompetition agreement executed without notice is absolutely unenforceable *regardless* of the subsequent conduct of the contracting parties (including, for example, an employee's express ratification of the agreement notwithstanding its voidability).

In short, we conclude that plaintiff's failure to show that she took any steps to void the noncompetition agreement precludes her claim for intentional interference. The most that plaintiff can show is that the agreement may have been voidable; however, because it had not been voided at the time that defendant sought to invoke the contract, the agreement was valid and in effect. It follows that defendant's actions in contacting plaintiff and T. R. Points to remind them of plaintiff's contractual obligations to defendant were

not wrongful as a matter of law. *See Uptown Heights*, 320 Or at 651-52 ("When a party invokes an express contractual remedy in circumstances specified in the written contract— conduct that reflects, by definition, the reasonable expectations of the parties—that party cannot be liable for intentional interference with economic relations based solely on that party's reason for invoking the express contractual remedy."). Because plaintiff identified no other alleged "improper means" or "improper purpose," the trial court correctly granted defendant's motion for summary judgment on plaintiff's claim for intentional interference with economic relations.

Affirmed.