Argued and submitted October 13, 2021; reversed and remanded
October 5; on respondents' petition for reconsideration filed November 16, 2022,
reconsideration allowed by opinion January 25, 2023
See 323 Or App 739, 524 P3d 571 (2023)

RIDE PDX, LLC,
an Oregon limited liability company;
and Andrea Fenton,
an individual,
*Plaintiffs-Appellants,*

*v.*

TEE & B, LLC,
an Oregon limited liability company,
dba Growler Guys;
Tom Wise; and Sue Wise,
individuals,
*Defendants-Respondents.*

Multnomah County Circuit Court
18CV06420; A171923

519 P3d 870

Plaintiffs appeal a judgment in favor of defendants on their claim for intentional interference with economic relations, assigning error to the trial court's summary judgment ruling. Plaintiffs contend that the trial court erred in concluding that they had failed to raise a question of material fact as to the wrongful conduct element of their claim, which requires proof of interference for an improper purpose or accomplished through improper means. *Held*: Where defendants were acting to enforce a valid contract right, plaintiffs could not, as a matter of law, establish that the alleged interference was for an improper purpose. However, that did not necessarily insulate defendants from liability for interference accomplished through improper means. Because plaintiffs presented sufficient evidence to raise a question of fact on that issue based on misrepresentation, the trial court erred in granting summary judgment for defendants.

Reversed and remanded.

Stephen K. Bushong, Judge.

J. Kurt Kraemer argued the cause for appellants. Also on the briefs were Katie Jo Johnson and McEwen Gisvold LLP.

Brian R. Talcott argued the cause for respondents. Also on the brief was Dunn Carney Allen Higgins & Tongue LLP.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

SHORR, J.

Reversed and remanded.

**SHORR, J.**

Plaintiffs and defendants leased adjacent commercial space in the Riva on the Park building, a high-rise in Portland's South Waterfront neighborhood. Plaintiffs operated an indoor cycling studio in their space, and defendants operated a growler filling station and bar/café in theirs; the two businesses shared a common wall. Defendants complained to the landlord, Riva Portland, LLC (Riva),[1] about the noise and reverberations emanating from plaintiffs' space and, eventually, threatened to sue Riva for breach of its lease with defendants if the noise disturbance was not resolved. Soon thereafter, Riva sought to evict plaintiffs. After successfully defending against that litigation, plaintiffs brought this action against defendants for intentional interference with economic relations, claiming that defendants had tortiously interfered with plaintiffs' existing business relationship with Riva.[2] The trial court granted summary judgment to defendants, concluding that plaintiffs had failed to provide evidence sufficient to create a genuine issue of material fact with respect to the "wrongful conduct" element of their claim, and, based on that ruling, entered a general judgment in favor of defendants.[3] Plaintiffs appeal, assigning error to the court's summary judgment ruling. For the reasons set out below, we reverse and remand.

To establish a claim for intentional interference with economic relations, the plaintiff must prove the following elements: "(1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage); (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and (6) damages." *Allen v. Hall*, 328 Or 276, 281, 974 P2d 199 (1999).

---

[1] The Riva on the Park building was managed by Greystar Worldwide, LLC (Greystar).

[2] Plaintiffs' complaint also included a defamation claim; that claim was dismissed with prejudice by stipulation of the parties.

[3] The order on summary judgment and the general judgment were issued by different judges.

Only the fourth element, wrongful conduct, is at issue in this appeal. As the Supreme Court has explained, to be actionable, an interference resulting in injury to another must be wrongful "by some measure beyond the fact of the interference itself." *Top Service Body Shop v. Allstate Ins. Co.*, 283 Or 201, 209, 582 P2d 1365 (1978) (*Top Service*). In particular, to be wrongful, the plaintiff must prove the defendant's "improper motives" or "use of improper means." *Id.* If a defendant's alleged liability is based on the former, "then the purpose must be to inflict injury on the plaintiff as such." *Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or 487, 498, 982 P2d 1117 (1999) (internal quotation marks omitted). If liability is based on the use of improper means, "then the means must violate some objective, identifiable standard, such as a statute or other regulation, or a recognized rule of common law, or, perhaps, an established standard of a trade or profession." *Id.* (citing *Top Service*, 283 Or at 209-10). Improper means can include "violence, threats or other intimidation, *deceit or misrepresentation*, bribery, unfounded litigation, defamation, or disparaging falsehood." *Top Service*, 283 Or at 210 n 11 (emphasis added). It is the plaintiff's burden to show "both that a defendant intentionally interfered with the plaintiff's economic relationship and that the defendant had no privilege to do so." *Northwest Natural Gas Co.*, 328 Or at 499; *see also generally Wampler v. Palmerton*, 250 Or 65, 74, 439 P2d 601 (1968) ("A person who interferes with a contract is not always responsible for the resultant injury. If he is promoting an interest which is equal or superior in social value to that with which he interferes, his actions are said to be privileged or justified." (Footnote omitted.)).

With those basic legal principles in mind, we turn to the background facts and procedural history of this case. In 2014, defendants leased space in the Riva on the Park building to operate their business, Growler Guys, a growler filling station and café that serves food, beer, cider, wine, and nonalcoholic beverages. The lease included a "quiet enjoyment" provision, Article 22, which stated:

> "Upon payment by the Tenant of the Rent herein provided for and upon the observance and performance of all of the agreements, covenants, terms and conditions on Tenant's

part to be observed and performed, Tenant shall peaceably and quietly hold and enjoy the Premises for the Term without hindrance or interruption by Landlord or any other person or persons lawfully or equitably claiming by, through or under Landlord."

Defendants understood at the time that a nail salon was going into the space next door. However, that did not occur and, instead, plaintiffs leased the space for a fitness business, Ride PDX, LLC (Ride PDX), which offered indoor cycling classes. Ride PDX's business description promised, "Studio acoustics that let you hear and feel the music" with "epic space" and "rocking music."

Growler Guys opened for business on March 15, 2015, and Ride PDX opened about two months later. After plaintiffs opened for business, defendants began complaining to Riva about the noise and vibrations coming into their space from cycling classes at Ride PDX—primarily loud bass sounds and vibrations and instructor voices—and the negative effect of that noise on defendants' business. Defendants continued to complain to Riva about the sound disturbance coming from Ride PDX for more than 15 months.

Finally, on September 7, 2016, defendants' attorney, Shikany, sent a letter to the building manager Greystar, asserting that landlord Riva was in breach of Article 22 of its lease with defendants and that defendants would file a lawsuit if the sound coming into defendants' space from Ride PDX was not immediately remedied. The letter stated that "Landlord has repeatedly failed to allow [defendants] to conduct its business without hindrance or interruption. The actions of Landlord have damaged [defendants'] name and financially impacted their business." It also asserted that defendants "did not come into this space with any sound issues."

Soon thereafter, in October, Riva began eviction proceedings against plaintiffs, alleging that they were in violation of their lease due to noise. After a bench trial, the court found in favor of Ride PDX in that case.

Plaintiffs then filed a claim for intentional interference with economic relations against defendants, alleging

that defendants had intentionally interfered with their existing business relationship with Riva. The complaint alleged that Riva had sought to evict plaintiffs because of defendants' threat of litigation against Riva; that defendants' assertions—specifically, that the sound coming from plaintiffs' space had hindered or interrupted defendants' business, that defendants had suffered significant financial harm as a result, and that the sound only became a problem after Ride PDX opened—were false; and that defendants' motive in making those assertions was to extract rent concessions from Riva. Thus, plaintiffs alleged, defendants' interference was "accomplished by improper means, specifically, deceit or misrepresentation and defamation and disparaging falsehoods, and improper motives." And, although Ride PDX had prevailed in the eviction trial, plaintiffs' relationship with Riva "was irrevocably broken as a result of [defendants'] complaints and instigations, and [plaintiffs were] forced to quit the premises."

Defendants moved for summary judgment, arguing that plaintiffs could not establish the wrongful conduct element of their claim—whether improper means or improper purpose—as a matter of law, because Shikany's September 7 letter on behalf of defendants sought only to enforce defendants' contract rights to quiet enjoyment of the premises under their lease with Riva. *See Bernard v. S.B., Inc.*, 270 Or App 710, 350 P3d 460, *rev den*, 358 Or 69 (2015). Moreover, defendants argued, even if their motive was, as plaintiffs alleged, to extract rent concessions from Riva (an allegation defendants disputed), that is not a basis for a tortious interference claim in any event because, to be actionable, "the purpose must be to inflict injury on *the plaintiff*." (Emphasis added.) *See Northwest Natural Gas Co.*, 328 Or at 498; *Top Service*, 283 Or at 211. Finally, defendants contended that plaintiffs could not show improper means because the undisputed evidence from the eviction trial supports the statements made in the letter. And, defendants asserted, the eviction court's determination that Ride PDX was not in breach of its lease with Riva is irrelevant and "does not retroactively transform defendants' assertion of its contractual right into a tortious act."

In response, plaintiffs contested defendants' reliance on the enforcement of their lease with Riva. According to plaintiffs, defendants "couldn't or wouldn't say what was an 'acceptable' level of sound coming from Ride PDX," leaving Riva unable to cure the alleged default, which, in defendants' view, was "bad faith." Plaintiffs also pointed out evidence from the eviction trial that, in plaintiffs' view, showed that defendants had misrepresented the facts about the nature and extent of the sound coming from plaintiffs' space and its impact on their business and had lied about the fact that they did not have any noise issues before Ride PDX opened in the adjacent space. In plaintiffs' view, defendants had to demonstrate that the sound and its effect on their business constituted a nuisance, and that was a question for the jury. Plaintiffs further contended that defendants were precluded from using evidence at the eviction trial to "re-litigate whether its right of quiet enjoyment had been breached."

The trial court ruled in favor of defendants, reasoning as follows:

> "The letter from James Shikany, and other efforts from Defendants regarding the noise issues, sought to enforce a right of Defendants under their lease. These efforts were all done in good faith. As a result, there is no evidence of wrongful conduct. Further, there is no evidence of improper or illegal motive in sending the letter. Even if there was evidence of improper motive, which I find that there was not, Defendant was entitled to enforce its lease in the manner it did so here. If the purpose of the Defendants was to extract rent concessions that is not an improper purpose, vis-à-vis the Plaintiffs or vis-à-vis the Riva. This Motion presents no issue or claim preclusion. Accordingly, Defendants are entitled to summary judgment."

Plaintiffs now appeal, assigning error to that ruling.

On appeal of a grant of summary judgment, we will affirm the trial court's judgment if we agree that "there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001); ORCP 47 C. No issue of material fact exists if, viewing the evidence in the light most favorable to the nonmoving party,

in this case, plaintiffs, "no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." ORCP 47 C. "[T]he nonmovant has the burden of offering admissible evidence to create a genuine issue of material fact 'on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial.'" *O'Dee v. Tri-County Metropolitan Trans. Dist.*, 212 Or App 456, 463, 157 P3d 1272 (2007) (quoting ORCP 47 C). Thus, here, to defeat defendants' motion for summary judgment, plaintiffs were required to come forward with specific facts demonstrating a genuine issue for trial on the wrongful conduct element of their claim, that is, improper means or improper purpose. *Id.*

Plaintiffs contend that they presented evidence raising a jury issue as to each prong. With respect to improper purpose, plaintiffs reprise their argument that, because defendants "didn't know or couldn't say" what level of sound would be acceptable to satisfy the lease, "[i]t was error for the trial court to accept on summary judgment that the Defendants were trying to enforce a contract right." They also identify evidence, that, in their view, shows that defendants' purpose was not to enforce their lease, but to extract unjustified rent concessions from Riva.

With respect to "improper means," although not entirely clear, we understand plaintiffs to argue that, even if defendants acted with the legitimate business purpose of enforcing their contract with Riva, they can nonetheless be liable because there is evidence that they used improper means in doing so—specifically, by misrepresenting or making false statements to Riva regarding the nature and effect of noise coming from plaintiffs' business on their business. In other words, plaintiffs assert that, even if defendants had a proper motive for complaining to Riva based on enforcing their own contract, "by making actionable misstatements of fact" in doing so, they accomplished the interference through improper means. Thus, in plaintiffs' view, defendants' conduct was wrongful.

Defendants' principal response is that plaintiffs could not create an issue of material fact for trial on the

wrongful conduct element—whether improper purpose *or* improper means—because defendants were acting within their rights to enforce their contract with Riva. That, according to defendants, protects them from an intentional interference claim, and plaintiffs' attempt to raise an issue of fact by suggesting that defendants exaggerated the noise level coming from Ride PDX or its effect on defendants' business cannot change that result.

Beginning with improper purpose, we readily agree with defendants that plaintiffs have failed to create a genuine issue of material fact on that question. In *Uptown Heights Associates v. Seafirst Corp.*, 320 Or 638, 651, 891 P2d 639 (1995) (*Uptown Heights*), the Supreme Court expressly rejected the argument that "a party who invokes an express contractual remedy by proper means still may be liable for intentional interference with economic relations if that party simply has a malevolent reason for enforcing its written contract." As the court explained, "That is because, if the defendant has interfered with the plaintiff's economic relations, the defendant has done so for a 'legitimate' purpose—invocation of an express, written contractual remedy—in such circumstances." *Id.* at 652 (quoting *Straube v. Larson*, 287 Or 357, 361, 600 P2d 371 (1979) (internal citation omitted)). To rule otherwise "would contravene public policy and undermine the stability of contractual relations" because "[i]t would be anomalous to hold that a party to a contract nonetheless must defend a tort claim when a complaint shows that the party did precisely what the party was entitled to do under the contract." *Id.*; *accord Bernard*, 270 Or App at 715 ("As a matter of law, a party invoking the express terms of a contract has a 'legitimate' purpose and does not expose itself to liability for interference with economic relations." (Citing *Uptown Heights*, 320 Or at 651-52.)).[4]

In this case, defendants had a contract with Riva, which included an express provision that defendants were entitled to quiet enjoyment of their leased space. Attempting to enforce that contractual right, which defendants did by complaining to Riva about the noise and threatening to

---

[4] Plaintiffs fail to grapple with *Bernard* or *Uptown Heights*, or, indeed, any of the key cases on that issue.

bring a lawsuit, was, as a matter of law, not interference for an improper purpose, regardless of defendants' motivations for doing so.[5] "When a party invokes an express contractual remedy in circumstances specified in the written contract—conduct that reflects, by definition, the reasonable expectations of the parties—that party cannot be liable for intentional interference with economic relations based solely on that person's reason for invoking the express contractual remedy." *Uptown Heights*, 320 Or at 651-52. That defendants—in separate litigation to which they were not parties—did not testify to precisely the level of sound coming from Ride PDX that would satisfy Article 22 of their lease does not negate their legitimate business purpose of acting to enforce it. Defendants did no more than what they were entitled to do under their contract. *Id.* at 652. The trial court did not err in concluding that, as a matter of law, plaintiffs could not establish that defendants acted for an improper purpose.

However, we disagree with defendants' assertion that, because the alleged interference with plaintiffs' relationship with Riva was for the purpose of enforcing their own contract rights, plaintiffs are also unable, as a matter of law, to establish that defendants accomplished the interference through the use of improper means.

Defendants contend that our decision in *Bernard* compels that conclusion. We disagree. In *Bernard*, the plaintiff had a noncompetition agreement with the defendant. When she left the defendant's employment and went to work for one of its competitors, the defendant contacted the plaintiff and her new employer, reminding them both of the plaintiff's contractual obligations to the defendant. The defendant later sent a letter to the plaintiff and the new employer to the same effect. 270 Or App at 712-13. The plaintiff voluntarily quit her job. She then sued the defendant for intentional interference with economic relations,

---

[5] Even if that were not the case, to be actionable under the "improper purpose" prong, the purpose must be to inflict injury *on the plaintiff. Northwest Natural Gas Co.*, 328 Or at 498. Here, plaintiffs alleged that defendants' improper purpose was to obtain rent concessions from Riva *for their own benefit*. Thus, even if the record supported an inference that that was defendants' purpose, it would not be sufficient to create a question of fact on that issue.

alleging that the defendant had sought to enforce the non-competition agreement, which it knew to be unenforceable, by intimidation and threat of legal action. *Id.* at 713. The trial court granted summary judgment to the defendant.

On appeal, the plaintiff argued that the court erred because the defendant's threat to enforce the noncompetition agreement, which it knew to be unenforceable, constituted interference through an improper means or for an improper purpose. *Id.* at 714. In resolving the appeal, we reiterated the principle from *Uptown Heights* that, "[a]s a matter of law, a party invoking the express terms of a contract has a 'legitimate' purpose and does not expose itself to liability for interference with economic relations." *Id.* at 715 (quoting and citing *Uptown Heights*, 320 Or at 651-52). We rejected the plaintiff's argument that *Uptown Heights* did not apply because the agreement at issue was unenforceable under ORS 653.295(1)(a)(A).[6] Analyzing that statute, we concluded that, although the noncompetition agreement may have been voidable, the plaintiff had failed to show that she took any steps to void the agreement, so there was no issue for trial that the agreement was "valid and in effect" when the defendant sought to enforce it. *Id.* at 719. Thus, under *Uptown Heights*, the defendant's actions to remind the plaintiff and her employer of the plaintiff's contractual obligations to the defendant "were not wrongful as a matter of law."[7] *Bernard*, 270 Or App at 719-20.

However, in *Bernard*, the *only* allegation of improper purpose or improper means was that the defendant was attempting to enforce an invalid agreement. Thus, *Bernard* stands for the proposition that invoking a valid contract right

---

[6] At the time, ORS 653.295(1)(a)(A) provided that "[a] noncompetition agreement between an employer and employee is voidable and may not be enforced" unless the employee is informed in writing two weeks before the first day of employment that a noncompetition agreement is required as a condition of employment. The plaintiff submitted a declaration to the effect that she was not informed of the noncompetition agreement until after she started work. *Bernard*, 270 Or App at 716.

[7] Implicit in our reasoning is that, if the plaintiff *had* presented evidence from which a jury could have found that the agreement was voided, then summary judgment would have been inappropriate—in other words, that the defendant's attempt to enforce a void agreement *could* be interference for an improper purpose or through improper means.

does not *itself* constitute "improper purpose" or "improper means" as a matter of law. *See id.* at 720 ("Because plaintiff identified no other alleged 'improper means' or 'improper purpose,' the trial court correctly granted defendant's motion for summary judgment on plaintiff's claim for intentional interference with economic relations."). However, contrary to defendants' argument here, *Bernard* does not on its face preclude all "improper means" challenges when a defendant is acting to enforce a valid contract. That is, *Bernard* left open the possibility that a plaintiff could prove that the defendant accomplished the interference through some other improper means, such as misrepresentation, as plaintiffs allege in this case.

Our case law also suggests that such a challenge is available, although neither appellate court has confronted the question directly until now. The Supreme Court's opinion in *Top Service* provides a helpful guide. There, in concluding that the propriety of the defendant's motive is part of the plaintiff's case, rather than an affirmative defense of privilege,[8] the Supreme Court explained that, "even when defendant's objectives are not improper, for instance the pursuit of competition or other legitimate interests, defendant may still be liable for using improper means to achieve those objectives."[9] 283 Or at 209. Noting that the question of privilege does not arise unless the interference would be wrongful but for the privilege, the court also agreed with the *Restatement (Second) of Torts*' analysis to the extent it acknowledges that "[e]ven a recognized privilege may be overcome *when the means used by defendant are not justified by the reason for recognizing the privilege.*" *Id.* at 210 (referencing *Restatement (Second) of Torts* sections 766, 767, comments j, k, l (Tent. Draft No. 23, 1977)) (emphasis added).[10]

---

[8]  The court reached that conclusion, in part, based on the evolution of the *Restatement of Torts* chapter dealing with interference with existing or prospective contracts. *Top Service*, 283 Or at 206-10.

[9]   The court did not need to address the issue in *Top Service* because it was not a theory presented to the jury. *See* 283 Or at 215 (declining to consider the plaintiff's argument that the defendant "would not be privileged to interfere with plaintiff's business relations by unlawful or otherwise improper means even in pursuit of its own business objectives" because that theory was not presented to the jury).

[10]  As we have previously recognized, the tort of intentional interference with economic relations—including the "improper purpose" or "improper means"

The reason Oregon law recognizes a privilege to interfere based on a contractual right is to safeguard the stability of legitimate contractual relationships. As the court explained in *Uptown Heights*, "'Economic relations are controlled by contract[,] and the public [as well as the individual contracting party] has an interest in maintaining the security of such transactions.'" 320 Or 652 (quoting *Wampler*, 250 Or at 73 (brackets in *Uptown Heights*)). That justification, however, does not extend to the use of improper means, such as misrepresentations, to enforce a contractual right. In other words, the societal benefit to be gained by protecting contractual relationships does not justify interference accomplished through improper means, whether in the context of enforcing a contract or otherwise. In invoking a contract right, the defendant is doing nothing more than what the contract allows the defendant to do; the same cannot be said of a defendant who engages in misrepresentations or other improper means to accomplish the interference with a plaintiff's business relationships.

We also note that, in *Uptown Heights*, the court held that a defendant cannot be liable for intentional interference with economic relations based "solely" on the defendant's invocation of a contractual remedy. 320 Or at 652. We must assume that the court's use of the word "solely" was purposeful. Moreover, the court expressly limited its holding to the "improper purpose" prong of the wrongful conduct element, signaling the possibility that a defendant could nevertheless be liable based on the "improper means" prong. *Id.* at 652 n 5.

For all of those reasons, we conclude that acting for the purpose of enforcing a valid contract does not necessarily insulate a defendant from liability for interference accomplished through improper means, even though that purpose is proper as a matter of law under *Uptown Heights*.

We therefore turn to plaintiffs' "improper means" argument. As it has evolved and narrowed during this litigation, we understand plaintiffs to claim "misrepresentation"

---

element—is analyzed in Oregon law by reference to certain provisions of the *Restatement (Second) of Torts*. *See Douglas Medical Center v. Mercy Medical Center*, 203 Or App 619, 630-31, 125 P3d 1281 (2006) (so explaining).

as the improper means by which defendants accomplished the alleged interference in plaintiffs' relationship with Riva—specifically, that defendants made false statements to Riva about the extent of the noise disturbance coming from Ride PDX and its effect on defendants' business, which interfered with plaintiffs' economic relationship with Riva. *See Douglas Medical Center v. Mercy Medical Center*, 203 Or App 619, 634, 125 P3d 1281 (2006) ("'Improper means' must be independently wrongful by reason of statutory or common law, and include violence, threats, intimidation, deceit, *misrepresentation*, bribery, unfounded litigation, defamation and disparaging falsehood." (Emphasis added; some internal quotation marks omitted.)). Importantly, to satisfy the improper means prong of the tort, the plaintiff is *not* required

> "to prove all the elements of liability for another tort if those elements that pertain to the defendant's conduct are present. For instance, fraudulent misrepresentations made to a third party are improper means of interference with plaintiff's contractual relations whether or not the third party can show reliance injurious to himself."

*Id.* at 633-34 (citing *Top Service*, 283 Or at 209-10, 210 n 11); *see also Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 622, 733 P2d 430 (1987) (regarding improper means, "it is unnecessary in making out an interference claim to prove all the elements of another tort").

The *Restatement* explains the rule, in part, as follows:

> "*Misrepresentations*. Fraudulent misrepresentations are also ordinarily a wrongful means of interference and make an interference improper. A representation is fraudulent when, to the knowledge or belief of its utterer, it is false in the sense in which it is intended to be understood by its recipient. (See § 527). In some circumstances one who is liable to another for intentional interference with economic relations by inducing a third person by fraudulent misrepresentation not to do business with the other may also be liable under other rules of the law of torts. *** The tort of intentional interference thus overlaps other torts. But it is not coincident with them. One may be subject to liability

for intentional interference even when his fraudulent representation is not of such a character as to subject him to liability for the other torts."

*Restatement (Second) of Torts* section 767 comment c (1979) (italics in original).

With that in mind, we consider whether plaintiffs presented sufficient evidence to raise a question of fact with respect to improper means based on misrepresentation. Plaintiffs contend that the conflicting evidence in the record as to the qualitative nature and extent of the sound from Ride PDX penetrating defendants' space and its effect on defendants' financial health raises a genuine issue of material fact for the jury on that question. Defendants rejoin that the record demonstrates that they lost customers as a result of the sound coming from plaintiffs' space into theirs; thus, their statements to Riva were accurate and "[p]laintiffs' attempt to pick around the edges of that evidence in an effort to show that the complaints were subjective or exaggerated do not add up to misrepresentations, and thus do not support reversal."

Although the record is admittedly slim, ultimately, we agree with plaintiffs that, viewing the evidence in their favor, as we must, a reasonable juror *could* find that defendants' representations regarding the effects of the sound from Ride PDX on their business were false "in the sense in which [they were] intended to be understood by [Riva]." *Restatement* § 767 comment c.

Defendants complained to Riva that sound and vibrations coming from Ride PDX emanated into their space, causing customer complaints and loss of business, culminating in the September 7 letter from defendants' attorney. That letter stated that, as a result of the sound, Riva had "failed to allow [defendants] to conduct its business without hindrance or interruption" and "[t]he actions of [Riva] have damaged [defendants'] name and financially impacted their business."

As defendants point out, it is undisputed that sound and reverberations emanating from plaintiffs' business came through the wall into defendants' place of business.

There is also evidence that defendants had customer complaints about the sound coming from plaintiffs' operation and there were some who left or did not return because of it.

However, the record also shows that, although defendants told Riva that they had received multiple written customer complaints, after two years of operations and serving "hundreds and hundreds" of customers, defendants had received only one written customer complaint. That email complaint, from a repeat customer, stated that he had left the bar one evening because all he could hear was a "constant, droning, pounding, bass," and he could not hear the baseball game over "the racket." He also noted, however, "I don't think I've ever heard it before tonight[.]" Similarly, although defendants told Riva that the noise from Ride PDX negatively affected their employees, plaintiffs presented evidence from Kimball, a manager and two-year employee of Growler Guys, that, although he occasionally heard noise coming from Ride PDX, it did "[n]ot at all" affect how he did his job. He also testified that no other employee had complained to him "about the noise being loud enough to affect their ability to do their job."

Further, plaintiffs presented evidence that, although defendants told Riva that they did not have any noise complaints before Ride PDX moved in, defendants had in fact received some complaints prior to that time. The record includes evidence of online reviews of Growler Guys from customers complaining about the noise in the bar before Ride PDX opened. One review from April 7, 2015, for example, exclaimed, "This space is too loud inside! You cannot carry on a conversation[.]" Another from April 15, 2015, said, "It is hard to carry on a conversation because it is an open ceiling warehouse space with no sound abatement. So it is fairly loud and probably not a good space for deep and serious conversations :-)." Another, undated review also complained about noise that was unrelated to Ride PDX: "[I]f you get more than 10 people in the place it sounds like a stadium of 1000's! I guess that's what you get when you design a place to be 'industrially hip' with all concrete rather than a functional bar to drink some beer. Get a seat outside and enjoy!"

Finally, plaintiffs presented evidence that defendants' net income increased during the time that plaintiffs' and defendants' businesses were operating in adjacent spaces. Although not dispositive, that evidence at least raises a question of fact regarding whether defendants misrepresented to Riva the adverse effect of the noise on the financial health of their business.

With all of that, we conclude that the evidence is sufficient for a reasonable juror to find that defendants made misrepresentations to Riva about the extent and quality of the noise disturbance from Ride PDX and its effect on defendants' business as an "improper means" of interfering with the economic relationship between plaintiffs and Riva. Specifically, a reasonable juror could find that defendants misrepresented to Riva that, as a result of the noise from Ride PDX, Growler Guys was unable "to conduct its business without hindrance or interruption," its name had been damaged, and its business financially impacted. To be sure, a jury would not be required to so find; however, the trial court erred in taking the question from the jury and granting summary judgment to defendants. Accordingly, we reverse and remand.

Reversed and remanded.